IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INTERSIL CORPORATION, ) <br> ) <br> Defendant. ) | C.A. No. _____ <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR DEFAMATION, TORTIOUS INTERFERENCE, UNFAIR COMPETITION, AND MISAPPROPRIATION OF TRADE SECRETS UNDER FEDERAL AND DELAWARE LAW**

**NATURE OF THE ACTION**

1. Plaintiff Monolithic Power Systems, Inc. ("MPS") seeks all appropriate relief for Defendant Intersil Corporation's ("Intersil") defamatory statements, tortious interference with MPS's prospective economic advantage, unfair competition, and misappropriation of MPS's trade secrets.

2. MPS is a world leader in the development, manufacture, and sale of semiconductor products, such as power integrated circuits including multi-phase controllers. MPS has achieved double-digit revenue growth year-over-year, reflecting its tremendous innovation in the design of such semiconductor products. MPS has been obtaining design win after design win, including for multi-phase controllers.

3. Intersil directly competes against MPS in the semiconductor industry generally and for multi-phase controllers specifically. In stark contrast to MPS's financial success through its development of innovative products, Intersil has suffered negative revenue growth for the past several years.

{01171392;v1 }

4. Intersil has sought to stem the tide of further declines to its revenue by engaging in unfair and deceitful acts with the hope of landing design wins. For example, Intersil has unlawfully obtained and continues to improperly use MPS's highly confidential business information pertaining to the operation of MPS products, such as its multi-phase controllers, including, e.g., the MP86905 and MP2955. In particular, Intersil unlawfully obtained and used, and continues to unlawfully use, all and/or portions of a forty-two page MPS highly confidential powerpoint presentation of a failure analysis of two motherboards incorporating an MP86905 and MP2955 configuration (hereinafter "Failure Analysis presentation"). This failure analysis was done to analyze an extremely rare failure mode and to provide a register fix as a solution, correcting the failure. Intersil has used MPS's highly confidential business information, and in fact lifted verbatim bench test result slides from the Failure Analysis presentation and then incorporated them, out of context and without reference to the correction, in a powerpoint presentation it prepared entitled "MPS Issue." Intersil has used the "MPS Issue" presentation to fabricate a web of falsehoods about the circuit design and operation of those MPS products. Intersil then conveyed those falsehoods to MPS customers and potential customers, hoping that its deceitful efforts would induce them to decide to use Intersil products instead of MPS products.

5. In the Intersil presentation entitled "MPS Issue" that Intersil has used with MPS's current and potential customers, a circuit design is shown that Intersil presents as being the actual design of competing MPS products, including the MP86905 and MP2955 product families. But this circuit design is not representative of the actual design of the MPS products. Even though Intersil knows that this is not the actual design, Intersil incorrectly asserts in the presentation that the alleged design causes an operational flaw that would occur in all such MPS products and

result in undesired heating, and, thus, failure of motherboards incorporating the MPS products. The circuit design shown in the presentation is not only different than the actual circuit design, but also inferior. Intersil is intentionally misrepresenting MPS's circuit design as a basis for a fabricated problem that results in failures in motherboards incorporating those MPS products in order to win business to the detriment of MPS.

6. MPS seeks for Intersil to be preliminarily and permanently enjoined from continuing this conduct, and MPS also seeks monetary damages for the economic harm that Intersil has already inflicted on MPS.

## THE PARTIES

7. Plaintiff MPS is a corporation organized and existing under the laws of Delaware, with its principal place of business and headquarters at 79 Great Oaks Blvd, San Jose, California 95119.

8. Upon information and belief, Defendant Intersil is a corporation organized and existing under the laws of Delaware, with its principal place of business at 1001 Murphy Ranch Road, Milpitas, California 95035.

## JURISDICTION AND VENUE

9. This action includes a claim for misappropriation of trade secrets arising under the laws of the United States, in particular the Defend Trade Secrets Act under Title 18 of the United States Code. This action also includes a claim for misappropriation of trade secrets arising under the laws of Delaware, and claims for defamation, tortious interference, and unfair competition arising under the common law.

10. The Court has subject matter jurisdiction over MPS's claims for misappropriation of trade secrets under the Defend Trade Secrets Act pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836.

11. The Court has supplemental jurisdiction over MPS's claims for misappropriation of trade secrets under Delaware law, defamation, tortious interference, and unfair competition pursuant to 28 U.S.C. § 1367, as these claims form part of the same case or controversy and derive from a common nucleus of operative fact as MPS's claims under the Defend Trade Secrets Act.

12. The Court has personal jurisdiction over Intersil because, among other things, Intersil is incorporated under the laws of Delaware in this District.

13. Venue is proper in this District under 28 U.S.C. §§ 1391.

## FACTUAL BACKGROUND

14. MPS is an industry-leading fabless semiconductor company that designs, develops, markets, and sells semiconductor products, including multi-phase controllers. MPS has achieved significant growth year over year and great financial success due to its unmatched technical innovation.

15. Intersil competes with MPS in the development and sale of semiconductor products, including multi-phase controllers. Intersil's products directly compete with MPS's products. Intersil has been suffering from negative revenue growth for the past several years. Indicative of Intersil's struggles are its losses of design wins, such as losses to MPS due to customers' preference for MPS's products.

16. Intersil has approached and is approaching current and potential customers of MPS, including on information and belief Micro-Star International Co., Ltd ("MSI"), to fraudulently induce these customers to purchase Intersil products instead of MPS products.

17. During its discussions with MPS's current and potential customers, such as, on information and belief, MSI, Intersil has been making false and defamatory statements about the design and operation of MPS products, including the MP86905 and MP2955 product families. These false and defamatory statements include statements that the MPS products would cause failure of motherboards incorporating those MPS products.

18. For example, in the Intersil powerpoint presentation entitled "MPS Issue," Intersil unlawfully incorporates MPS highly confidential business information, taken out of context, from, e.g., MPS's Failure Analysis presentation. This presentation contains sensitive discussion about a very rare technical failure that certain motherboards incorporating a configuration of the MP86905 and MP2955 products were experiencing at the time. When technical issues arise during development, MPS works with its customers to resolve those issues, and the very rare technical failure described in MPS's Failure Analysis presentation has since been resolved. In fact, the technical fix—a simple register fix—was provided in the Failure Analysis presentation.

19. MPS does not normally distribute the same failure analysis report to a different customer because such failure is customer-specific and occurs only under certain condition or limitations, particularly when the vast majority of these issues are temporary and fixable. In addition, these reports could contain a customer's confidential information that MPS cannot share with other customers. Taking the report out of context by suggesting that the failure is widespread could damage MPS's reputation and misleads MPS's existing and potential customers and therefore hurts MPS's sales.

20.     In its "MPS Issue" presentation, Intersil wrongfully asserts that MPS products, including the MP86905 and MP2955 product families, have a specific circuit design that results in abnormal performance and heat damage.  Intersil's assertions are knowingly false, misleading, and defamatory.  The specific circuit design provided in the powerpoint presentation entitled "MPS Issue" falsely reflects the actual circuit design present in the MPS products, and is in fact inferior in design and operation to the actual circuit design.  Moreover, Intersil makes no reference to the fact the error described in the Failure Analysis presentation was corrected.  Intersil has disseminated the "MPS Issue" presentation to MPS's current and potential customers including, on information and belief, MSI.

21.     One of the defamatory statements made by Intersil against MPS includes a statement in the "MPS Issue" presentation that MPS's products "heat[] up" when lower side current limit is tripped, and illustrates on the same page of the presentation a circuit design that results in the problem occurring.  Not only are Intersil's fabricated statements on MPS's products "heat[ing] up" and the representation of the purported circuit design supposedly causing such heat untrue, but also Intersil's false implication that this heating up can occur in all applications of the specific MPS product, such as on a motherboard, let alone across all MPS products having the same feature, is wrong and defamatory.

22.     As noted, other examples of defamatory statements made by Intersil against MPS include Intersil's use in the "MPS Issue" presentation of a circuit design that Intersil claims represents the circuit design of MPS products in the MP86905 and MP2955 product families that results in an operational flaw.  In fact, that circuit design schematic does not represent the MPS product in question, and is instead an inferior circuit design to the actual design used in the MPS

products. Intersil's false claim that MPS products include the inferior circuit design resulting in its alleged heating defect is likewise defamatory.

23. During its discussions with MPS's current and potential customers, such as, on information and belief, MSI, Intersil has also been improperly disseminating MPS highly confidential technical data that Intersil has improperly obtained about the operation of MPS products, including the MP86905 and MP2955 product families, and that information has been copied into the "MPS Issue" presentation. Specifically, as previously noted, the MPS highly confidential information that has been copied into Intersil's "MPS Issue" presentation are the benchmark test result slides from MPS's Failure Analysis presentation.

24. During the design and development process for MPS's products, MPS communicates closely with its customers to ensure their needs are met. As part of this communication, and in order to facilitate the design process, MPS often provides a limited number of highly confidential technical documents about its products to its customers. These documents are clearly labeled with confidential markings like "MPS Confidential-Internal Use Only," as is MPS's Failure Analysis presentation. Such confidential documents are provided by MPS to its customers under various agreements that MPS has with its customers to maintain the confidentiality of such documents and prevent their unauthorized dissemination.

25. MPS's customers include Super Micro Computer, Inc. ("Supermicro"). In the process of designing and developing certain products for Supermicro, including the MP86905 and MP2955 product families, MPS provided Supermicro with highly confidential technical information including operational data for those products, including MPS' Failure Analysis presentation. The documents exhibiting this data were clearly marked "MPS Confidential-Internal Use Only."

26. On information and belief, Defendant Intersil misappropriated MPS's confidential information from Supermicro without regard to Supermicro's duty of confidentiality to MPS. Intersil did so with full knowledge that MPS and Supermicro considered the operational data and failure analysis highly confidential. As a result of its actions, Intersil improperly acquired MPS's highly confidential technical information including operational data for MPS products and MPS's failure analysis.

27. Intersil's disclosures to MPS's current and potential customers including, on information and belief, MSI, contain disclosures directly copied from MPS's highly confidential documents. For example, Intersil's "MPS Issue" powerpoint presentation includes the bench test results slides from MPS's Failure Analysis presentation, and in fact the figures, images, and text are directly copied from this highly confidential Failure Analysis presentation that MPS provided to Supermicro, while cropping out MPS's markings of "MPS Confidential-Internal Use Only" to fraudulently indicate to MPS's current and potential customers that MPS does not consider the data confidential.

28. While improperly disclosing MPS's highly confidential operational data to MPS's current and potential customers, Intersil has fraudulently misrepresented this data in an effort to further defame MPS's products, including the MP86905 and MP2955 product families.

## FIRST CLAIM FOR RELIEF - DEFAMATION

29. MPS incorporates by reference the allegations in the paragraphs above.

30. Intersil has made defamatory statements to MPS's current and potential customers about the operation of MPS's products, including the MP86905 and MP2955 product families to fraudulently induce MPS's current and potential customers to purchase Intersil products instead of MPS products. Intersil has published these defamatory statements to MPS's current and

potential customers including, on information and belief, MSI through various means, including its "MPS Issue" powerpoint presentation.

31. Intersil's defamatory statements include statements falsely denigrating the performance of certain MPS products, including the MP86905 and MP2955 product families, such as the written statement Intersil made in its "MPS Issue" powerpoint presentation that MPS products "heat[] up" under specified circumstances. This statement as written is untrue, as is its implication that it applies to all MPS products.

32. As another example, Intersil's "MPS Issue" presentation includes a schematic that Intersil claims represents MPS products in the MP86905 and MP2955 product families, even though the schematic does not represent MPS products and is in fact an inferior circuit design.

33. Given that Intersil fabricated statements and schematics to denigrate MPS products, including the MP86905 and MP2955 product families, Intersil either knew its statements were false or was reckless or negligent in failing to determine the statements' falsity.

34. Intersil acted with actual malice and ill will in an effort to induce MPS's current and potential customers to purchase Intersil products instead of MPS products.

35. MPS is not a public figure.

36. As a direct and proximate result of Intersil's defamation, MPS has incurred and will continue to incur substantial economic damages through the loss of current and potential customers and economic goodwill, in an amount to be proved at trial.

37. Intersil's actions in defaming MPS were willful, wanton, malicious, and were taken with reckless disregard for MPS's rights.

38. MPS therefore seeks a judgment against Intersil for compensatory and punitive damages, prejudgment interest, an award of costs, and such other relief as the Court deems just and proper.

### SECOND CLAIM FOR RELIEF - MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT OF 2016

39. MPS incorporates by reference the allegations in the paragraphs above.

40. Confidential information that MPS provides to its customers with confidentiality markings during the product design process, including highly confidential operational data, constitutes protectable trade secrets. Dissemination of such confidential information is limited by the agreements that MPS has with its customers.

41. MPS's technical information related to the design and operation of its products, including highly confidential operational data is not readily ascertainable through proper means.

42. MPS derives actual economic value from the confidential design and operation of its products.

43. MPS took reasonable steps to maintain the confidentiality of its trade secrets, including by insisting that customers agree to maintain confidentiality, and labeling documents with clear confidentiality markings.

44. On information and belief, Intersil has improperly acquired MPS's trade secrets from MPS's customers like Supermicro without regard to the duty of confidentiality that MPS's customers like Supermicro owe to MPS.

45. On information and belief, Intersil has improperly used and disclosed MPS's trade secrets by improperly disseminating them to MPS's customers and potential customers without MPS's permission, including MSI.

46. Intersil's continued improper possession of MPS's trade secrets, including highly confidential operational data, means that Intersil can continue to harm MPS through further dissemination.

47. As a result, Intersil has violated the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq*.

48. As a direct and proximate result of Intersil's violation, MPS has incurred and will continue to incur substantial economic damages through the loss of current and potential customers and economic goodwill, in an amount to be proved at trial.

49. Intersil's actions in converting, misappropriating, and improperly disseminating MPS's trade secrets for Intersil's own gain were willful, wanton, malicious, and were taken with reckless disregard for MPS's rights.

50. Intersil's actions have caused and will continue to cause MPS irreparable harm if not preliminarily and permanently enjoined.

51. MPS has no adequate remedy at law.

52. MPS therefore seeks a judgment against Intersil for compensatory and exemplary damages, preliminary and permanent injunctive relief, prejudgment interest, an award of costs and reasonable attorneys' fees pursuant to the Defend Trade Secrets Act, and such other relief as the Court deems just and proper.

**THIRD CLAIM FOR RELIEF - MISAPPROPRIATION OF TRADE SECRETS UNDER DELAWARE LAW**

53. MPS incorporates by reference the allegations in the paragraphs above.

54. Intersil's conduct described above as violating the Defend Trade Secrets Act also violates Delaware's codification of the Uniform Trade Secrets Act, Del. Code Ann. Title 6 § 2001 *et seq*.

55. As a direct and proximate result of Intersil's violation, MPS has incurred and will continue to incur substantial economic damages through the loss of current and potential customers and economic goodwill, in an amount to be proved at trial.

56. Intersil's actions in converting, misappropriating, and improperly disseminating MPS's trade secrets for Intersil's own gain were willful, wanton, malicious, and were taken with reckless disregard for MPS's rights.

57. Intersil's actions have caused and will continue to cause MPS irreparable harm if not preliminarily and permanently enjoined.

58. MPS has no adequate remedy at law.

59. MPS therefore seeks a judgment against Intersil for compensatory and punitive damages, preliminary and permanent injunctive relief, prejudgment interest, an award of costs and reasonable attorneys' fees pursuant to Del. Code Ann. Title 6 § 2001 *et seq*, and such other relief as the Court deems just and proper.

**FOURTH CLAIM FOR RELIEF - TORTIOUS INTERFERENCE**

60. MPS incorporates by reference the allegations in the paragraphs above.

61. MPS has an ongoing marketing and sales relationship with its customers in that MPS develops products for its customers' purchase, often with direct input from those customers. MPS has a reasonable business expectancy that such customers will continue to purchase MPS products. These business relationships are governed by certain agreements.

62. MPS has a reasonable business expectancy for a marketing and sales relationship with its potential customers in that at least some of those potential customers would likely become customers.

63. MPS's current and potential customers with which it has a business expectancy include MSI and Supermicro.

64. Intersil was fully aware of MPS's business expectancy with its current and potential customers, as indicated by Intersil's creation of a powerpoint presentation entitled "MPS Issue" to present to MPS's current and potential customers.

65. Intersil intentionally interfered with MPS's business expectancy with its current and potential customers, including MSI, by improperly disseminating MPS's trade secrets, including MPS's highly confidential operational data, and making defamatory and denigrating statements about the operation of MPS products, including the MP86905 and MP2955 product families.

66. As a direct and proximate result of Intersil's interference with MPS's customer relationships, MPS has incurred and will continue to incur substantial economic damages through the loss of current and potential customers and economic goodwill, in an amount to be proved at trial.

67. Intersil's actions in interfering with MPS's customer relationships were willful, wanton, malicious, and were taken with reckless disregard for MPS's rights.

68. Intersil's actions have caused and will continue to cause MPS irreparable harm if not preliminarily and permanently enjoined.

69. MPS has no adequate remedy at law.

70. MPS therefore seeks a judgment against Intersil for compensatory and punitive damages, preliminary and permanent injunctive relief, prejudgment interest, an award of costs, and such other relief as the Court deems just and proper.

## FIFTH CLAIM FOR RELIEF - UNFAIR COMPETITION

71. MPS incorporates by reference the allegations in the paragraphs above.

72. MPS had a reasonable expectancy of entering into valid business relationships with at least some of its potential customers. MPS reasonably expected that at least some of these potential customers would purchase MPS products.

73. MPS also had a reasonable expectancy of continuing to sell its products to its current customers.

74. As a direct and proximate result of Intersil's unfair interference with MPS's customer relationships, MPS has incurred and will continue to incur substantial economic damages through the loss of current and potential customers and economic goodwill, in an amount to be proved at trial.

75. Intersil's unfair interference with MPS's customer relationships was willful, wanton, malicious, and was taken with reckless disregard for MPS's rights.

76. Intersil's actions have caused and will continue to cause MPS irreparable harm if not preliminarily and permanently enjoined.

77. MPS has no adequate remedy at law.

78. MPS therefore seeks a judgment against Intersil for compensatory and punitive damages, preliminary and permanent injunctive relief, prejudgment interest, an award of costs, and such other relief as the Court deems just and proper.

## REQUEST FOR RELIEF

MPS respectfully requests the Court to enter judgment in its favor and against Intersil as follows:

A. Damages adequate to compensate MPS for the actual loss caused by Intersil's

defamatory statements denigrating MPS products;

  B. A preliminary and permanent injunction prohibiting Intersil from further disclosing, transmitting, and/or using MPS's confidential trade secrets and requiring the return of MPS's confidential trade secrets;

  C. An order compelling Intersil to identify all third parties to whom Intersil disseminated MPS's trade secrets to allow MPS to recover its confidential business information and trade secrets improperly disclosed by Intersil to others;

  D. Damages adequate to compensate MPS for the actual loss caused by Intersil's misappropriation and improper disclosure of MPS's trade secrets;

  E. A preliminary and permanent injunction prohibiting Intersil from further tortious interference with MPS's business relationships with current and potential customers;

  F. Damages adequate to compensate MPS for Intersil's tortious interference in MPS's business relationships with current and potential customers;

  G. A preliminary and permanent injunction prohibiting Intersil from acts of unfair competition against MPS;

  H. Damages adequate to compensate MPS for Intersil's acts of unfair competition against MPS;

  I. Exemplary and punitive damages for Intersil's willful, wanton, and malicious conduct;

  J. Pre-judgment and post-judgment interest on all damages awarded;

  K. Costs and reasonable attorneys' fees incurred in connection with this action;

  L. A full accounting of the damages above, including for past damages and any continuing or future damages; and

M.  Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

MPS demands a trial by jury on all issues triable by a jury.

|  |  |
|---|---|
|  | ASHBY & GEDDES |
|  | /s/ *Tiffany Geyer Lydon* |
| *Of Counsel* | _____ |
|  | John G. Day (#2403) |
| John P. Schnurer | Tiffany Geyer Lydon (#3950) |
| John D. Esterhay | 500 Delaware Avenue, 8th Floor |
| PERKINS COIE LLP | P.O. Box 1150 |
| 11988 El Camino Real, Suite 350 | Wilmington, DE  19899 |
| San Diego, CA 92130-2594 | (302) 654-1888 |
| (858) 720-5700 | jday@ashby-geddes.com |
| jschnurer@perkinscoie.com | tlydon@ashby-geddes.com |
| jesterhay@perkinscoie.com |  |
|  | *Attorneys for Plaintiff* |
| Dated:  December 6, 2016 | *Monolithic Power Systems, Inc.* |