# In The Matter Of:

*Monolithic Power Systems, Inc., v.*
*Intersill Corporation*

---

*Special Master Hearing*
*June 12, 2018*

---

*Wilcox & Fetzer, Ltd.*
*1330 King Street*
*Wilmington, DE 19801*
*email: depos@wilfet.com, web: www.wilfet.com*
*phone: 302-655-0477, fax: 302-655-0497*



Original File Monolithic Power v. Intersil Corp. 06-12-18 Special Master Hearing.txt
Min-U-Script® with Word Index

        IN THE UNITED STATES DISTRICT COURT

        FOR THE DISTRICT OF DELAWARE

MONOLITHIC POWER       )
SYSTEMS, INC.,         )
                       )
        Plaintiff,     )
                       )
        v.             )C.A. No. 16-1125-LPS
                       )
INTERSIL CORPORATION,)
                       )
        Defendant.     )

                        SPECIAL MASTER HEARING

                        Weiss & Saville, P.A.
                        1105 North Market Street
                        Suite 200
                        Wilmington, Delaware

                        Tuesday, June 12, 2018
                        6:46 p.m.

BEFORE:  YVONNE SAVILLE, ESQUIRE,
         Special Discovery Master

APPEARANCES: (Via telephone)

        JOHN D. ESTERHAY, ESQUIRE
        PERKINS COIE, LLP
          11988 El Camino Real-Suite 350
          San Diego, California 92130
                - and -

Cont'd...


            TRANSCRIPT OF PROCEEDINGS


            WILCOX & FETZER
1330 King Street-Wilmington, Delaware 19801
            (302) 655-0477
            www.wilfet.com



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

```
1   APPEARANCES (cont'd):

2           JOHN G. DAY, ESQUIRE
            ASHBY & GEDDES
3             500 Delaware Avenue
              Wilmington, Delaware 19801
4             for the Plaintiff

5           ROBERT M. TRAVISANO, ESQUIRE
            EPSTEIN BECKER & GREEN, P.C.
6             150 College Road West-Suite 301
              Princeton, New Jersey 08540
7                   - and -
            WALI RUSHDAN II, ESQUIRE
8           FOX ROTHSCHILD, LLP
              919 North Market Street-Suite 300
9             Wilmington, Delaware 19801
              for the Defendant
10
                    - - - - -
11

12

13

14

15

16

17

18

19

20

21

22

23

24
```



1          THE SPECIAL MASTER:  This is a

2    special discovery master hearing based on

3    plaintiff Monolithic Power Systems' motion

4    to compel on discovery issues related to

5    Intersil's sham relevance review.

6          Who's making the argument?

7    Mr. Esterhay, I presume you're making it

8    for MPS?

9          MR. ESTERHAY:  Yes, that's

10   correct.  This is John Esterhay of Perkins

11   Coie on behalf of plaintiff MPS.  I'll be

12   doing the talking today for MPS.  So I'll

13   go ahead and get started if you're ready.

14          THE SPECIAL MASTER:  Probably

15   since we have raised, it looks like, five

16   different distinct issues, we will just

17   take one at a time.

18          MR. ESTERHAY:  Sure.  I think

19   it might be helpful to have a little

20   background before getting into the

21   discovery, the specific discovery

22   requested, if that's okay.

23          THE SPECIAL MASTER:  Sure.

24          MR. ESTERHAY:  So as you may



1   recall, this issue stems from your order

2   that you issued I think at the last

3   in-person hearing on March 23rd that

4   Intersil would not be permitted to conduct

5   a relevance review on emails in the

6   November-10th-to-22nd period.  And the

7   reason that came up was Intersil's

8   production was withholding emails that were

9   eventually produced by a third party --

10          THE SPECIAL MASTER:  There's

11  some background noise.  I'm not sure where

12  it's coming from.

13          MR. ESTERHAY:  The reasoning

14  behind that was Intersil was withholding

15  emails that were produced by a third-party

16  custodian of the emails that made it

17  apparent that Intersil was withholding

18  relevant emails under its relevance review.

19          So that order compelled

20  Intersil to produce all emails in the

21  November-10th-to-22nd period without

22  conducting a relevance review.  The

23  reasoning behind the November 10th deadline

24  on the beginning side was that is the date

1    that Intersil's marketing employee,

2    Starry Tsai, made Intersil's entire sales

3    team aware of MPS's confidential issue, and

4    Mr. Tsai himself has testified that he

5    learned of that issue from an engineer in

6    Taiwan named Mr. John Chuang, who in turn

7    learned of it from the Super Micro

8    engineer, Vincent Lin, who used to work at

9    Intersil and was apparently imbedded into

10   Super Micro to provide this type of

11   information from Intersil.  And Mr. Lin

12   provided that in approximately September of

13   2016, according to text messages produced

14   in the case.  I had a conversation with

15   Mr. Starry Tsai about that on or around

16   November 10th, and then Mr. Tsai provided

17   it to Intersil.  So that was the reasoning

18   behind the November 10th side of that.

19            The November 22nd side of that

20   was based on the date that Intersil was

21   awarded the Microsoft Cloud computing

22   business, because that was one of the key

23   business lines that is at issue in the

24   case, and Intersil claimed throughout the

1    case that it had only made disclosures

2    about the confidential issues to Microsoft.

3    So the November 22nd side of that period

4    was important for that reason.

5              After Intersil made its

6    production, it's apparent that the scope of

7    this issue is far bigger than we even knew

8    back a couple months ago.  There are

9    hundreds, perhaps thousands, of emails that

10   are relevant that were withheld under the

11   relevance review.  We have included

12   examples of some of these with the motion.

13   For instance, Exhibit 3 is an email about

14   the creation of the FTS issue presentation,

15   which is clearly relevant because even

16   Intersil admits that's a relevance subject

17   matter for the case.

18             Another example is Intersil

19   reverse engineering MPS's product sold to

20   Microsoft Mobile.  And one method that MPS

21   is able to offer a mixed-signal solution,

22   which is a digital wrapper over an analogue

23   core which allows the controller to perform

24   digital functions.  Intersil did not have

1  its own digital solution, so the reason MPS

2  was able to win that business was because

3  of that mixing of the solution, and that is

4  the exact core of the trade secrets that

5  MPS has alleged Intersil has stolen were

6  architecture details about that

7  mixed-signal solution.

8             So Intersil reverse engineering

9  MPS's product to learn how MPS is doing

10  things is extremely relevant to this case

11  about what they were able to obtain and

12  whether or not their motive for going one

13  step further to obtain MPS's trade secrets

14  for that product.

15             The core issue here is the fact

16  that there are additional disclosures to

17  customers other than Microsoft that have

18  come out of that production.  Again,

19  Intersil claimed throughout the case that

20  Microsoft was the only party who received

21  these disclosures, and that claim was made

22  multiple times in briefs and

23  meet-and-confers, in interrogatory

24  responses, and as you will recall, there's

1   a motion to compel that was heard I think

2   it was in January where Intersil refused to

3   answer interrogatories about these

4   additional customers like Lenovo on account

5   of a sworn interrogatory response that said

6   there was no disclosure made to Lenovo.

7   Initially none was produced, so we had

8   nothing to counter that statement, and the

9   motion was denied because only the sworn

10  interrogatory statement existed.  That

11  denial continued through depositions where

12  Intersil refused to allow MPS to question

13  the 30(b)(6) witness, Mr. Roger Wendelken,

14  on other customers beyond Microsoft based

15  on these same claims.

16              So now that these emails have

17  actually been produced, it shows that there

18  were disclosures to customers like Lenovo.

19  There is a proven disclosure of the

20  confidential set of issues to Lenovo.

21  That's in Exhibit 11.  And it's fairly

22  obvious that this was withheld under

23  Intersil's sham relevance review based on

24  the fact that it was reviewed, but it hit

```
1    on the key search terms and custodian was
2    reviewed and because it actually was
3    withheld and then the responses to the
4    interrogatories were made to make it seem
5    like there were no disclosures to Lenovo.
6                So Lenovo is the obvious one
7    and also HP and Dell was another one
8    identified from the latest production.  So
9    it expands the scope of the case
10   drastically from just Microsoft to these
11   other potential customers, some of which
12   like Lenovo were suspected earlier, if not
13   entirely known, based on Intersil's
14   interrogatory responses and others like HP
15   and Dell that we had no reason to be aware
16   of but for this production.
17               So the discovery we're seeking
18   is based on that.  I'll get to that in a
19   second, but before I did that, I just
20   wanted to address the main argument in
21   Intersil's brief which is that this
22   information somehow came from a public
23   source.  That is not true.  The Intersil
24   employees got this information from
```



1    Starry Tsai.  He testified that he got it

2    from John Chuang, who is the individual who

3    received it from Super Micro.  What

4    Intersil is doing is conflating a different

5    issue with Pegatron that predated this

6    issue by about a year.  So for Intersil, it

7    makes sense to kind of conflate everything

8    together and make it seem like MPS always

9    had all these problems, but these are

10   separate issues, and Mr. Tsai even

11   testified to that.  If you look at

12   Exhibit 17, which is Mr. Tsai's testimony,

13   he testified that he's not sure -- "I'm not

14   sure exactly -- well, I'll start from the

15   beginning.  We talked about -- we talked

16   about we already hear about all these

17   issues from Pegatron, Inventek, and John

18   mentioned to me about Super Micro, some of

19   their issues.  I'm not sure exactly similar

20   or not, but, you know, it seems like -- it

21   seems like the same issue to me.

22              So basically Mr. Tsai had heard

23   about something from Pegatron or Inventek.

24   Now, that's not a public disclosure by any

1  means, and it's probably its own separately

2  actionable misappropriation of trade

3  secrets, but the key here is it's not the

4  same as the issue that Mr. Lin disclosed to

5  John Chuang disclosed to Mr. Tsai.

6              And Mr. Tsai's email about this

7  issue even confirms that further.  If you

8  go to Exhibit 9, Mr. Tsai states that "MPS

9  has to do" -- this is the first page of

10  Exhibit 9.  "MPS has to do all (inaudible)

11  or COC in certain situations and burn the

12  high side SET in its STF.  So it's like an

13  exact same issue happened a year ago in

14  Pegatron and they never fixed this issue

15  for over a year.  So I guess it also

16  relates to TWM, not only STF.  Heard this

17  issue happened in Super Micro and confirmed

18  by John Chuang.  So it all relates."

19              Basically Mr. Tsai is making an

20  assumption that something he heard about

21  from Pegatron a year ago, whatever that

22  was, is somehow related to the issue that

23  he heard about from Mr. Chuang which is the

24  non-public, confidential issue that is at

1    issue in this case.

2                So that's the first point, and

3    then the second point is the court order

4    that Intersil relies on throughout most of

5    its brief was related solely to the early

6    limited discovery that was part of the

7    early limited discovery order that was

8    issued in this case.  And just some

9    background, because that was before you

10   were involved.

11               The Court entered an early

12   limited discovery order to allow the

13   parties to pursue discovery related to

14   whether or not MPS would pursue an

15   injunction, and the injunction was solely

16   related to the trade secret claims.  So it

17   would make sense for the trade secret

18   claims to be limited to non-public

19   information.  However, MPS has defamation

20   claims in this case, and that includes the

21   disclosures that have recently come out of

22   Intersil's production, and MPS is entitled

23   to pursue discovery on the defamation claim

24   which is why, when MPS served second

```
1    discovery requests, it asked for
2    disclosures of MPS information to customers
3    rather than just MPS confidential
4    information.  Intersil never objected to
5    the definition of "MPS information."  "MPS
6    information" listed in the brief is defined
7    as basically -- I want to get it right --
8    "MPS information" is defined as "any
9    information about MPS, its product, or the
10   business obtained by Intersil by any
11   means," and Intersil never objected to this
12   definition.  Intersil plans to object to it
13   generally to MPS's discovery request, but
14   it can't surprise us with a hidden
15   objection that was never mentioned.
16              So that is the reason that --
17   one more issue that proves it's not public
18   information is the fact that before Lenovo
19   was told about MPS's issue, which was
20   Exhibit 11, there's an email that proves
21   Lenovo didn't know about this issue.  So if
22   it isn't public, how could Lenovo not know
23   about it.  And that's Exhibit 12.
24              So this all proves that this
```

```
1    wasn't a public issue, it is part of the

2    case, it is part of the disclosures that

3    should have been produced a long time ago

4    and shouldn't have been withheld in the

5    sham relevance review, and it's rather

6    shocking that we're having to deal with

7    this right now rather than deal with this a

8    year ago.

9              Which brings me to what we're

10   actually asking for which is another

11   interesting case because Intersil's brief

12   doesn't acknowledge that they already

13   agreed to produce a lot of this discovery.

14   Now I don't understand if they're just

15   going back on that or what they're trying

16   to do.  But they previously agreed to

17   produce the interrogatory responses.  They

18   previously agreed to produce a 30(b)(6)

19   witness.  What they didn't agree to produce

20   was the documents leading to not conducting

21   a relevance review on the production

22   through December 31st, and also an

23   additional deposition of Mr. Wendelken.

24              So just starting with the
```

1   interrogatory responses, these are the
2   basic responses that they agreed to give us
3   supplements to these.  We were supposed to
4   get them on May 14th.  That was later
5   extended to May 21st.  You gave them the
6   ability to do that.  Then they were not
7   produced.  We were supposed to get these
8   before we conducted additional depositions.
9   So we had to postpone those additional
10  depositions.  And this is very basic
11  discovery that we should have gotten over a
12  year ago that would allow us to understand
13  the scope of the case and would provide
14  some indication of what we're talking about
15  as far as disclosures.  We're entitled to
16  those interrogatories.
17              As far as the emails through
18  December 31st, the additional disclosures
19  make it clear that this case is not limited
20  to Microsoft.  So the November 22nd
21  deadline, which was specific to Microsoft
22  because it's the deadline the cloud
23  computing decision was made, needs to be
24  extended to December 31st.  There's simply

1  no way we can trust Intersil's relevance

2  review at this point.  It's clear that it

3  was made to then strip the scope of the

4  case and to hide relevant discovery from

5  production.

6              Again, this is relatively

7  limited relief we're asking for, because

8  we're not asking for the relevance review

9  to be negated for the entire discovery

10  period, which goes all the way back to

11  June 1st, 2016.  We're fine, we're okay

12  with the November 10th deadline.  The

13  November 10th, 2016, date seemed one-sided,

14  but it needed to be extended to

15  December 31st to determine what kind of

16  other disclosures were made.

17              Then with regard to a 30(b)(6)

18  witness, again --

19              MR. TRAVISANO:  Excuse me for a

20  moment.

21              THE SPECIAL MASTER:  Yes?

22              MR. TRAVISANO:  I thought we

23  were going issue by issue.

24              THE SPECIAL MASTER:  Let's stop

1    there for a moment and we will go back to

2    the depositions and the -- we will go back

3    to issues 3, 4, and 5 in a minute.

4              Mr. Travisano --

5              MR. ESTERHAY:  I'm sorry.

6              THE SPECIAL MASTER:  That's

7    okay.

8              Mr. Travisano, I'm going to

9    allow you to make your argument, but was

10   there some representation that Intersil was

11   going to agree to supplement the

12   interrogatory responses?  Did Intersil

13   agree to do that?

14             MR. TRAVISANO:  Absolutely,

15   Ms. Saville.  I may be putting the cart

16   before the horse.

17             THE SPECIAL MASTER:  There was

18   an agreement to do that?

19             MR. TRAVISANO:  We were going

20   to do it, that's correct.

21             THE SPECIAL MASTER:  What

22   happened?

23             MR. TRAVISANO:  Well, what

24   happened was that we agreed to both



```
 1   supplement the interrogatories, as well as
 2   produce or produce or reproduce certain
 3   witnesses, and at 6:27 on Friday night
 4   Memorial Day weekend, our opposing counsel
 5   decided to cancel a number of those
 6   depositions, including Jia Wei, which we
 7   were going to be producing in
 8   North Carolina.  We were going to produce
 9   Mr. Wendelken for a full-day deposition.
10   We can get into that.  We were going to
11   produce Mr. Lister, who's no longer
12   employed by my client, and they just
13   decided to pull the rug out from under us,
14   cause us this change in travel plans.  And
15   the interrogatories would have been most
16   germane to Jia Wei, who was going to be
17   deposed during the week of June 4th.  We
18   were planning on getting those
19   interrogatories in advance of the week of
20   June 4th, but we never had that
21   opportunity.  So that's kind of where
22   things wound up.
23              MR. ESTERHAY:  I would like to
24   respond to that.
```

```
 1              THE SPECIAL MASTER:  Okay.
 2              MR. ESTERHAY:  They originally
 3   promised us the interrogatories would be
 4   provided May 14th.  Then we agreed that the
 5   deadline would be May 21st.  The
 6   depositions that were cancelled -- not
 7   cancelled, I'm sorry, postponed, were
 8   scheduled to start the following week after
 9   we had received the interrogatory
10   responses.  However, we got to May 25th,
11   which was the Friday before the next week
12   when the depositions were scheduled, and we
13   still had not received the interrogatory
14   responses that we had been promised.  So we
15   were unable to proceed at that date with
16   the scheduled depositions.
17              THE SPECIAL MASTER:  What's
18   your response to that, Mr. Travisano?
19              MR. TRAVISANO:  In all
20   fairness, the interrogatories were only
21   germane to Mr. Jia Wei who would have been
22   the real 30(b)(6) witness.  To the extent
23   that our friends at Perkins Coie decided to
24   blow up a series of depositions because
```

1  they didn't get interrogatories that were

2  only germane to a witness that wasn't even

3  going to be deposed until over, at that

4  point in time, maybe almost two weeks

5  later, it's really a little bit

6  disingenuous.

7              The other aspect is that week

8  we also had a settlement conference.  There

9  was a lot going on.  We were face to face a

10  number of times with our adversary and

11  nobody, not once, ever said, hey, we're

12  going to blow up these dispositions if you

13  don't give us the interrogatory responses,

14  the supplemental responses.  It was never

15  viewed, nor was it represented by our

16  adversary, that this was a condition.  And,

17  quite frankly, we viewed it as as long as

18  we got it before Jia Wei, who was going to

19  be the 30(b)(6) re-opened, then there would

20  essentially be no prejudice to the process.

21  But clearly John and his colleagues didn't

22  see it that way.

23              THE SPECIAL MASTER:  Do you

24  want to address the other arguments that

1    were made by Mr. Esterhay?

2                 MR. TRAVISANO:  Certainly.  I

3    think I'll try to touch on as much as I

4    could and certainly as briefly as I could,

5    but I think at the end of the day, this

6    really boils down to a fundamental

7    misunderstanding or disagreement as to the

8    scope of discovery.  Frankly, we don't need

9    to go any further than Judge Stark's

10   February 21st order setting forth the scope

11   of discovery.  During that hearing he

12   stated that the public information about

13   MPS's failure, not non-public information,

14   with the MPS PowerPoint issue was

15   essentially off-limits, and plaintiff's

16   counsel essentially stated on the record

17   that plaintiff was not in fact looking for

18   publicly available information.

19                 Now, we certainly disagree with

20   plaintiff's characterization of the

21   information that rolls out of your

22   Your Honor's last ruling to produce emails

23   for a particular period without relevance

24   review, and certainly we detailed that at

1    page 6 of our brief.

2                    For example, in Exhibit 14,

3    this is an email from Jia Wei who stated

4    that one in ten agenda items for meeting

5    with HP and Dell, that he was letting them

6    know that MPS is having some major trouble

7    at customers.  So he heard from customers

8    that that was public scuttlebutt.

9                    Moreover, on November 15th he

10   sent an email, stating that there were

11   certain MPS issues that he said he heard in

12   the field, quote/unquote, in the field.  So

13   that's not confidential information.  That

14   is scuttlebutt that is public information

15   that is out there in ether.  It's not, nor

16   should it be, complained with the MPS

17   PowerPoint, which is really the information

18   that MPS contends is confidential.  It's

19   information that was out there in the

20   marketplace in Taiwan and based upon our

21   understanding of the emails, certainly the

22   emails that are cited here which is why we

23   know them in the marketplace.

24                    Mr. Esterhay again talked about

1    hundreds, if not thousands, of emails that

2    may be relevant.  There's nothing in the

3    record to that effect.  There's a handful

4    of emails.  We're grossly, I think,

5    overstating and exaggerating to the max if

6    we're talking about hundreds, if not

7    thousands, of emails here.

8              Secondly, the issue of whether

9    or not their emails about reverse

10   engineering any product, reverse

11   engineering is not a trade secret issue.

12   Reverse engineering is not a trade secret,

13   rather.  And I think, and we certainly

14   discuss this in our opposition brief, that

15   one of their experts actually admits as

16   such.

17             And finally, I'd just like to

18   say one particular aspect, that

19   Mr. Esterhay mentioned that Starry Tsai

20   disclosed MPS confidential information to

21   the sales force on November 10th, 2018.  I

22   think we need to be very clear here.  MPS

23   confidential information I think has widely

24   been referred to in this case and certainly

1   understood by those involved here as MPS

2   PowerPoint information.  That information

3   was not in the possession of Intersil for I

4   think almost two weeks after that fact.

5                So just as a matter of fact,

6   Mr. Starry Tsai could not have disclosed

7   any confidential information.  It's our

8   belief, and certainly I think that the

9   record at this point in time bears it out,

10  that any information that Starry Tsai had,

11  as well as Jia Wei or anybody else at the

12  company, related to information either

13  gleaned from the marketplace or from

14  customers at that point in time.

15               THE SPECIAL MASTER:  Okay.

16               MR. ESTERHAY:  Can I respond to

17  that?

18               THE SPECIAL MASTER:  You can.

19               MR. ESTERHAY:  So the main

20  thing that Intersil has made is to try to

21  argue that this information came from a

22  public source, but there is no evidence

23  that any of this ever came from a public

24  source.  The only source of this

1    information was John Chuang.  That's what

2    Mr. Starry Tsai testified.  Mr. Jia Wei can

3    put in an email, oh, it's known in the

4    marketplace, but he heard it from Mr. Tsai.

5    To argue that it came from a public source,

6    while at the same time saying, I'm not

7    going to produce any discovery on it so you

8    will never know what this discovery is that

9    proves it came from a public source is

10   ludicrous.  I mean, he testified that he

11   heard about it from John Chuang.

12            Now, he did mention that he

13   heard about something else from Pegatron

14   and from Inventek a year earlier.  That was

15   a completely unrelated issue for a

16   different product, for a different

17   application.  So the only public,

18   quote/unquote, source of it is

19   Mr. Starry Tsai making his own assumptions

20   that the two issues are somehow related,

21   and that's even assuming what he heard from

22   Pegatron and Inventek would be public,

23   which it isn't.  That would be another

24   example of a customer issue.  It's a

1   different product and it's a different

2   application, but it's not what this case is

3   about, but it's potentially another

4   misappropriation of trade secrets standing

5   out there.

6                So to say that we are not going

7   to produce any discovery on it just because

8   we say it's public doesn't make any sense.

9   And, furthermore, like I said, there are

10  emails that prove that Lenovo did not know

11  about this until it was disclosed to us.

12  How can it be public?  How can you argue

13  that everyone in the marketplace knew about

14  this when Exhibit 12 shows that Lenovo had

15  no idea about this until Intersil started

16  telling them about it.  Exhibit 11, it

17  shows that Jia Wei responded to Starry Tsai

18  and said Lenovo's employee definitely got

19  interested by that.  Why would he get

20  interested by a disclosure if he already

21  knew?  So it's not the case to say that it

22  was public.

23                Furthermore, with regard to the

24  reverse engineering, that's important

 1    because, of course, reverse engineering is

 2    not a trade secret, but it shows that

 3    Intersil could not get what it needed from

 4    the reverse engineering.  It was trying to

 5    reverse engineer MPS's product.  It was

 6    failing to get the details that it needed

 7    to get.  So that established the motive for

 8    why it went ahead and unlawfully

 9    misappropriated the trade secret that's

10    highly relevant.  It's akin to myopic

11    approach to say, oh, the reverse

12    engineering in itself is not a trade

13    secret, so we don't have to produce

14    anything about it.  No, it's relevant to

15    the actual trade secret misappropriation

16    that happened.

17                    THE SPECIAL MASTER:  So I guess

18    my question to you is:  If you are assuming

19    that I make a finding that supplementing

20    the interrogatories that you requested,

21    15 to 19, Nos. 15 to 19, and 22 to 24, and

22    assuming that I grant the application to

23    take this additional 30(b)(6) witness, I

24    wonder if you're putting the cart before

1    the horse about asking for these additional

2    emails to be produced without those two

3    things taking place first.  Because, again,

4    I'm reluctant to do anything that would be

5    outside the scope of what Chief Judge Stark

6    has already ruled to be the scope of

7    discovery in the case.

8              MR. ESTERHAY:  Well, that's the

9    thing, we're not asking for you to go

10   beyond December 31st, which is the deadline

11   for -- or the end of the period that

12   Judge Stark ruled was the discovery period.

13   So it's not like we're asking you to go

14   into January 2017.  It's just pushing up

15   that November 22nd deadline that was your

16   previous order to December 31st.  It's

17   not --

18              THE SPECIAL MASTER:  Go ahead.

19              MR. ESTERHAY:  I was going to

20   say it's not putting the cart before the

21   horse, because this is twice now we have

22   had instances that prove that Intersil's

23   relevance review is so fundamentally flawed

24   to be a complete sham to prevent the

1   disclosure of relevant discovery.

2               THE SPECIAL MASTER:   I'm

3   more concerned about --

4               MR. TRAVISANO:   I have to

5   object to the characterization of our

6   relevance review as a scam.   We have a

7   standing order by the Chief Judge who

8   specified that there's a difference as

9   related to the scope of discovery between

10  public and non-public information.   This is

11  not a sham.   I really resent the fact that

12  Mr. Esterhay keeps referring to it as such.

13  The order says what the order says.

14              THE SPECIAL MASTER:   My concern

15  wasn't necessarily going beyond

16  December 31st.   I don't want to go outside

17  the distinction between the public versus

18  the non-public that's set forth in his

19  prior order.

20              MR. ESTERHAY:   Again, that's

21  contemplating that this came from a public

22  source, and it didn't.

23              THE SPECIAL MASTER:   That's

24  what I'm wondering.   If you're given the

1   opportunity to go through the discovery

2   process with the interrogatories and the

3   additional 30(b)(6) witness, I'll have a

4   better understanding about whether or not

5   this is really public or non-public or not.

6                    MR. ESTERHAY:  Here's the

7   thing, though:  It's not just the

8   public/non-public issue.  Like I said,

9   there were emails about the creation of the

10  MPS issue presentation that were withheld

11  under the relevance review.  An example is

12  Exhibit 3.

13                   So again, this reminds me of

14  the in-person hearing where -- and we've

15  given a few examples in the brief and

16  referred to the scope of this problem and

17  did not include every single email involved

18  in this issue.  But it is the case that

19  there are other relevant emails that were

20  implicated in this that were withheld as

21  part of this relevance review that are not

22  the same issue as the

23  public-versus-non-public question.

24                   THE SPECIAL MASTER:  Mr.

1   Travisano?

2            MR. TRAVISANO:  I can't even

3   respond to that.  He's asking me to respond

4   to emails and is basking in generalizations

5   here.  I think we have seen throughout that

6   exaggeration and hyperbole are the order of

7   the day whenever we come to one of these

8   hearings.  There are hundreds, if not

9   thousands, of emails that are relevant that

10  we're withholding according to

11  Mr. Esterhay, and one of the last things

12  that he just referenced, that we're

13  withholding hundreds of other emails, and

14  he cited two or three, which we had a clear

15  and level-headed response to each one of

16  the three that he produced in the context

17  of that motion.  I don't even know what to

18  say anymore, Ms. Saville.

19            MR. ESTERHAY:  Then why don't

20  we just take Exhibit 3.  It's an email

21  about the creation of the MPS issue

22  presentation, and it wasn't produced.  As

23  an example.  Why are emails like Exhibit 3

24  not being produced prior to the order that

1    Intersil could conduct a relevance review?

2                    THE SPECIAL MASTER:  How long,

3    Mr. Travisano, without committing you to

4    anything, how long is it going to take for

5    you to respond?  Based on your prior

6    representation that those interrogatory

7    responses would be sent, how long would it

8    take you to respond to those

9    interrogatories?

10                   MR. TRAVISANO:  This is the

11   12th.  I would like maybe till Wednesday of

12   next week, Ms. Saville.  That would be a

13   week from tomorrow.  I want to get in the

14   office and dig into what we need to do

15   about that.

16                   THE SPECIAL MASTER:  Give me an

17   explanation, I think you already did, but

18   your additional 30(b)(6) witness, who is

19   that, again?

20                   MR. TRAVISANO:  We were going

21   to initially produce Roger Wendelken.  We

22   were going to re-open his deposition.  He's

23   now over at Renesas Japan, and he was in

24   for the week after Memorial Day, and we had

1    designated him as Renesas Japan's 30(b)(6)

2    witness.  And we were going to produce him,

3    or I should say reproduce him, as Renesas

4    Japan's 30(b)(6), but Mr. Esterhay and his

5    colleagues wanted a full day to re-open his

6    deposition for this witness who was over

7    in -- from Japan for a limited basis.  We

8    said we would produce him for one full day,

9    and, quite frankly, we could have

10   accommodated them one full day, given the

11   fact that the Renesas Japan 30(b)(6)

12   deposition only took half a day.

13            So then when we couldn't come

14   to an agreement related to one full day for

15   Mr. Wendelken, we were going to produce

16   Jia Wei as both someone who may have

17   personal knowledge, as well as the 30(b)(6)

18   for Intersil.  Re-open 30(b)(6).

19            I might also add or should add,

20   rather, that we still haven't received

21   re-opened 30(b)(6) topics.  There's some

22   question that we shouldn't be allowed to

23   fall back on our other limited objections,

24   but, quite frankly, if these are new issues

1    and new topics certainly that are alleged

2    to have come out of the latest email

3    production, based upon your last findings,

4    then I think it would only be fair that we

5    don't go into this line and we're given the

6    opportunity to see what the exact issues

7    are.  We asked for that a number times and

8    still haven't gotten it.

9                So talking about flying blind,

10   we were going to produce a 30(b)(6)

11   re-open, but then we never got anything,

12   and all the depositions were blown up

13   except for Mr. Wendelken.

14                THE SPECIAL MASTER:  Mr.

15   Esterhay?

16                MR. ESTERHAY:  We did in fact

17   serve an amended 30(b)(6) notice.  I forget

18   the exact day.  I'm trying to find it.

19                John Day, do you recall the day

20   we served that?

21                MR. TRAVISANO:  Honestly, I

22   don't recall receiving one as it related to

23   the re-opened 30(b)(6) for Intersil.

24                MR. DAY:  It was June 4th.

```
 1                    MR. TRAVISANO:   June 4th would
 2     have been well after all the depositions
 3     were scheduled and then ultimately blown
 4     up.
 5                    THE SPECIAL MASTER:   Mr.
 6     Esterhay, what's your position with regard
 7     to Mr. Wendelken's production for a third
 8     day of depositions?
 9                    MR. ESTERHAY:   I think if we
10     get the other depositions, then we would be
11     okay relinquishing that request, and that's
12     both the 30(b)(6), which I understand would
13     be Jia Wei, as well as Starry Tsai.  He
14     hasn't been mentioned, but that was one of
15     the depositions that was agreed to be
16     reconvened.  I'm not sure what the status
17     is on that.  If we get Mr. Starry Tsai and
18     Mr. Jia Wei as a 30(b)(6) witness, we can
19     withdraw our request for Mr. Wendelken.
20                    THE SPECIAL MASTER:   I didn't
21     understand why you needed both.
22                    So given the prior
23     representation that they would be made
24     available, do you have any objection to
```

1    that, Mr. Travisano?

2              MR. TRAVISANO:  Well, which one

3    in particular, Ms. Saville?  For Jia Wei?

4              THE SPECIAL MASTER:  I was

5    thinking for Jia Wei, but what about

6    Starry Tsai?  Was a representation made

7    that they would be made available as well?

8              MR. TRAVISANO:  We were going

9    to make Starry Tsai available just out of

10   the spirit of compromise, but in the same

11   conversation, we had also hoped that

12   plaintiffs would produce Degula Chen, who

13   based upon our knowledge has some idea of

14   the facts and circumstances of this case.

15             They refused to produce him,

16   but we were going to produce Starry Tsai,

17   given the fact that -- notwithstanding the

18   fact that he's not an officer or director.

19             THE SPECIAL MASTER:  What was

20   the name of the plaintiff's witness again?

21   And can you spell it for the court

22   reporter?

23             MR. TRAVISANO:  Sure.  Degula

24   is D-e-g-u-l-a, last name Chen, C-h-e-n.

```
 1              So they are not going to
 2    produce him.  We were going to go ahead and
 3    produce Starry Tsai, notwithstanding,
 4    again, the fact that he's not an officer or
 5    a managing agent.
 6              THE SPECIAL MASTER:  Mr.
 7    Esterhay -- go ahead.
 8              MR. TRAVISANO:  Quite frankly,
 9    these depositions were all scheduled and
10    ready to go.  I had to change my flight.
11    It is what it is.  We're litigators.  That
12    happens to everybody.  But you have to
13    understand, Ms. Saville, that I'm not
14    working from an overwhelming feeling of
15    cooperativeness, given the fact that these
16    folks pulled the rug out from us at the
17    last moment under pretenses that, quite
18    frankly, really didn't apply to this latest
19    depositions that were going to go forward
20    that week.
21              THE SPECIAL MASTER:  Mr.
22    Esterhay, is there any reason not to
23    produce Mr. Chen for a deposition if I
24    order the depositions of Mr. Wei and
```

1 Starry Tsai?

2    MR. ESTERHAY: Yes. He's not

3 an officer, director, or managing agent.

4 So under the applicable case law, they need

5 to serve a subpoena if he's not authorizing

6 us to accept service on his behalf.

7    THE SPECIAL MASTER: Don't you

8 have the same problem with Starry Tsai?

9    MR. ESTERHAY: If that's the

10 position they now want to take, then that's

11 one thing, but they did say that he would

12 be deposed. And it was indicated that the

13 supplemental interrogatory responses would

14 not be relevant to his deposition, but

15 that's not true. It would be highly

16 relevant to his deposition because he's the

17 individual that first heard about this from

18 John Chuang and then spread it to

19 Intersil's sales department. So he's the

20 one that was kind of the source of this

21 information via the conduit in Super Micro.

22    So the interrogatory responses

23 were very relevant to his deposition which

24 is why, when they were not timely produced

1    when we were told they would be produced,

2    we were unable to move forward with the

3    deposition at that time.

4                THE SPECIAL MASTER:  I don't

5    think you get to have it both ways.  I

6    don't think you get -- and I recognize

7    you're telling me that there was a

8    representation Starry Tsai was going to be

9    produced.  But I'm going to order that

10   Jia Wei be produced for a deposition, and

11   that Starry Tsai be produced only if

12   Mr. Chen is produced as well.

13               I'm also going to order that

14   the supplemental interrogatory responses --

15   go ahead.  I'm also going to order that the

16   supplemental interrogatory responses be

17   done by close of business next Wednesday.

18   If there's an issue with meeting that

19   deadline, just let me know.

20               I'm going to deny the request

21   for the email production between

22   November 23rd and December 31st.  If

23   something comes out with these supplemental

24   interrogatory responses and/or these

 1   depositions, I may reconsider that

 2   position, but for right now I'm denying it.

 3                   I think that leaves one last

 4   issue, and that is the email attachment for

 5   which Intersil says that the email

 6   attachment cannot be located.

 7                   If a lawyer is making a

 8   representation to me that an email

 9   attachment can't be located, I kind of have

10   to take them on their word, and I'm not

11   sure how I can order the production of

12   something that can't be found.

13                   So I'll entertain an argument

14   on it, but I'm just not sure how I can

15   compel the production of something that

16   can't be located.

17                   MR. ESTERHAY:  Sure.  I just

18   think we're at least entitled to an

19   explanation.  This was an email attachment

20   that was received by Jia Wei.  So when we

21   depose Jia Wei, we can ask him.  However,

22   we're entitled to an explanation going into

23   that deposition as to why it wasn't done.

24                   THE SPECIAL MASTER:  Mr.

```
1   Travisano, is that something you can

2   provide now, or do you think you can give

3   some type of clarification for it between

4   now and the time the deposition takes

5   place?

6              MR. TRAVISANO:  Well, I can't

7   provide an explanation for it now.  But my

8   question I guess is more out of

9   clarification.  So is this something that I

10  need to go back and respond to, or based

11  upon what Mr. Esterhay said, the witness

12  should have an idea as to why there's no --

13  why the attachment wasn't able to be found?

14  If that's the case, it would sound to me

15  like that was, for lack of a better way of

16  saying it, a 30(b)(6) topic.

17              Maybe the easiest way is for us

18  to just provide Mr. Esterhay with some

19  color to the extent that we can --

20              THE SPECIAL MASTER:  That's a

21  good idea.  That's a good idea.  I'm

22  denying any request for sanctions, as I

23  don't think that this particular attachment

24  to an email was subject to any prior
```

```
 1   motions and/or hearings that we had before

 2   today.  So I'm denying the request for

 3   sanctions and fees.

 4               Does that answer everything

 5   today?  Does anybody need a clarification

 6   on my order at all, or is everybody good?

 7               MR. TRAVISANO:  No.  I think

 8   that's fine.  I was taking down notes

 9   frantically as you were speaking.

10               THE SPECIAL MASTER:  We will

11   try and get the transcript to everybody as

12   quickly as we can.  I'm also going to try

13   to provide the court reporter with some

14   spellings with regard to some of the

15   witnesses that we discussed that were

16   contained in the materials that you sent to

17   me.

18               Mr. Esterhay, do you need a

19   clarification for everything, or do you

20   understand my order as well?

21               MR. ESTERHAY:  No.  I think I

22   managed to understand everything, but to

23   the extent that we can get a transcript

24   sooner, that's probably helpful.
```

```
1                      THE SPECIAL MASTER:  I'll try
2    and resummarize just so we're clear.
3                      I'm granting MPS's request as
4    it pertains to the supplemental
5    interrogatory responses.  I'm granting the
6    request for the deposition of Jia Wei.  I'm
7    granting the request for the deposition of
8    Starry Tsai, presuming that you also make
9    available for deposition Mr. Chen.  I'm
10   denying the request for the email
11   productions between November 23rd and
12   December 31st, which I will reconsider if
13   there's some new information to bring to
14   light after today, but for now my decision
15   is that it's denied.  And I am denying the
16   request for any type of sanctions and fees
17   in connection with this hearing.
18                      Does that help?
19                      MR. ESTERHAY:  One
20   clarification.  Jia Wei will be produced as
21   a 30(b)(6) witness, correct?  That was my
22   understanding.
23                      THE SPECIAL MASTER:  Yes.  I
24   think that was what was represented before
```

 1   the depositions were cancelled before.

 2              Is that correct, Mr. Travisano?

 3              MR. TRAVISANO:  That is

 4   correct.

 5              THE SPECIAL MASTER:  Any

 6   further questions?

 7              MR. TRAVISANO:  I was just

 8   going to point out, Ms. Saville, my

 9   understanding was that they wanted to

10   depose him in his individual capacity as

11   well.  That's why we had designated him as

12   a 30(b)(6) witness.

13              MR. ESTERHAY:  That is correct.

14   It will be both in his individual capacity

15   and as a 30(b)(6) witness.  I'm sorry if

16   that wasn't clear.

17              MR. TRAVISANO:  I would just

18   like to, if possible, reserve the right to

19   designate any 30(b)(6) witness.  It may

20   very well be Jia Wei.  That was our plan

21   initially going into the deposition, but

22   once the smoke clears, I might have other

23   thoughts on who could be produced as a

24   30(b)(6) witness.

```
1              THE SPECIAL MASTER:  That's
2   fair.  So noted.  So I'm going to be out of
3   the office, I think you know, until
4   June 28th, but certainly, if there are any
5   emergencies, I have my email available.  If
6   there's something that we need to do in the
7   form of a telephone conference, just email
8   either me or Jill.  And if not, then I
9   presume I'll talk to you both I think on
10  July 2nd.  I think that's the next hearing.
11             MR. TRAVISANO:  I believe so.
12  Thank you, and I hope you're doing
13  something more productive out of the office
14  than we're doing.
15             THE SPECIAL MASTER:  Everybody
16  good?
17             MR. ESTERHAY:  Yes.
18             MR. TRAVISANO:  Yes.
19             THE SPECIAL MASTER:  Thank you,
20  everyone.  Have a nice night.
21             (Hearing adjourned at
22  7:36 p.m.)
23                      -  -  -  -  -
24
```

1                 C E R T I F I C A T E

2    STATE OF DELAWARE)

3                         )

4    NEW CASTLE COUNTY)

5

6                 I, Kimberly A. Hurley,
7    Registered Merit Reporter and Notary
     Public, do hereby certify that the
8    foregoing record, pages 1 to 46 inclusive,
     is a true and accurate transcript of my
9    stenographic notes taken on Tuesday,
     June 12, 2018, in the above-captioned
10   matter.

11                 IN WITNESS WHEREOF, I have
     hereunto set my hand and seal this 15th day
12   of June, 2018, at Wilmington.

13

14

15

16          Kimberly A. Hurley, RPR, RMR

17

18

19

20

21

22

23

24



Monolithic Power Systems, Inc., v.
Intersill Corporation

## A

**ability (1)**
15:6

**able (4)**
6:21 7:2,11 41:13

**Absolutely (1)**
17:14

**accept (1)**
38:6

**accommodated (1)**
33:10

**according (2)**
5:13 31:10

**account (1)**
8:4

**acknowledge (1)**
14:12

**actionable (1)**
11:2

**actual (1)**
27:15

**actually (4)**
8:17 9:2 14:10
23:15

**add (2)**
33:19,19

**additional (10)**
7:16 8:4 14:23 15:8,
9,18 27:23 28:1 30:3
32:18

**address (2)**
9:20 20:24

**adjourned (1)**
45:21

**admits (2)**
6:16 23:15

**advance (1)**
18:19

**adversary (2)**
20:10,16

**After (6)**
6:5 19:8 24:4 32:24
35:2 43:14

**Again (10)**
7:18 16:6,18 22:24
28:3 29:20 30:13
32:19 36:20 37:4

**agenda (1)**
22:4

**agent (2)**
37:5 38:3

**ago (6)**
6:8 11:13,21 14:3,8
15:12

**agree (3)**
14:19 17:11,13

**agreed (7)**
14:13,16,18 15:2
17:24 19:4 35:15

**agreement (2)**
17:18 33:14

**ahead (6)**
3:13 27:8 28:18
37:2,7 39:15

**akin (1)**
27:10

**alleged (2)**
7:5 34:1

**allow (4)**
8:12 12:12 15:12
17:9

**allowed (1)**
33:22

**allows (1)**
6:23

**almost (2)**
20:4 24:4

**already (5)**

10:16 14:12 26:20
28:6 32:17

**also (10)**
9:7 11:15 14:22
20:8 33:19 36:11
39:13,15 42:12 43:8

**always (1)**
10:8

**amended (1)**
34:17

**analogue (1)**
6:22

**and/or (2)**
39:24 42:1

**Another (5)**
6:18 9:7 14:10
25:23 26:3

**answer (2)**
8:3 42:4

**anybody (2)**
24:11 42:5

**anymore (1)**
31:18

**anything (4)**
27:14 28:4 32:4
34:11

**apparent (2)**
4:17 6:6

**apparently (1)**
5:9

**applicable (1)**
38:4

**application (3)**
25:17 26:2 27:22

**apply (1)**
37:18

**approach (1)**
27:11

**approximately (1)**
5:12

**architecture (1)**
7:6

**argue (3)**
24:21 25:5 26:12

**argument (4)**
3:6 9:20 17:9 40:13

**arguments (1)**
20:24

**around (1)**
5:15

**asked (2)**
13:1 34:7

**asking (7)**
14:10 16:7,8 28:1,9,
13 31:3

**aspect (2)**
20:7 23:18

**assuming (3)**
25:21 27:18,22

**assumption (1)**
11:20

**assumptions (1)**
25:19

**attachment (6)**
40:4,6,9,19 41:13,
23

**authorizing (1)**
38:5

**available (6)**
21:18 35:24 36:7,9
43:9 45:5

**awarded (1)**
5:21

**aware (2)**
5:3 9:15

## B

**back (7)**
6:8 14:15 16:10

17:1,2 33:23 41:10

**background (3)**
3:20 4:11 12:9

**based (11)**
3:2 5:20 8:14,23
9:13,18 22:20 32:5
34:3 36:13 41:10

**basic (2)**
15:2,10

**basically (3)**
10:22 11:19 13:7

**basis (1)**
33:7

**basking (1)**
31:4

**bears (1)**
24:9

**before (13)**
3:20 9:19 12:9
13:18 15:8 17:16
19:11 20:18 27:24
28:20 42:1 43:24 44:1

**beginning (2)**
4:24 10:15

**behalf (2)**
3:11 38:6

**behind (3)**
4:14,23 5:18

**being (1)**
31:24

**belief (1)**
24:8

**believe (1)**
45:11

**better (2)**
30:4 41:15

**between (5)**
29:9,17 39:21 41:3
43:11

**beyond (3)**

8:14 28:10 29:15

**bigger (1)**
6:7

**bit (1)**
20:5

**blind (1)**
34:9

**blow (2)**
19:24 20:12

**blown (2)**
34:12 35:3

**boils (1)**
21:6

**both (7)**
17:24 33:16 35:12,
21 39:5 44:14 45:9

**brief (7)**
9:21 12:5 13:6
14:11 22:1 23:14
30:15

**briefly (1)**
21:4

**briefs (1)**
7:22

**bring (1)**
43:13

**brings (1)**
14:9

**burn (1)**
11:11

**business (5)**
5:22,23 7:2 13:10
39:17

**C**

**came (7)**
4:7 9:22 24:21,23
25:5,9 29:21

**cancel (1)**

18:5

**cancelled (3)**
19:6,7 44:1

**cannot (1)**
40:6

**capacity (2)**
44:10,14

**Carolina (1)**
18:8

**cart (3)**
17:15 27:24 28:20

**case (23)**
5:14,24 6:1,17 7:10,
19 9:9 12:1,8,20 14:2,
11 15:13,19 16:4
23:24 26:2,21 28:7
30:18 36:14 38:4
41:14

**cause (1)**
18:14

**certain (3)**
11:11 18:2 22:11

**Certainly (10)**
21:2,4,19,24 22:21
23:13,24 24:8 34:1
45:4

**change (2)**
18:14 37:10

**characterization (2)**
21:20 29:5

**Chen (5)**
36:12,24 37:23
39:12 43:9

**C-h-e-n (1)**
36:24

**Chief (2)**
28:5 29:7

**Chuang (8)**
5:6 10:2 11:5,18,23
25:1,11 38:18

**circumstances (1)**
36:14

**cited (2)**
22:22 31:14

**claim (2)**
7:21 12:23

**claimed (2)**
5:24 7:19

**claims (4)**
8:15 12:16,18,20

**clarification (5)**
41:3,9 42:5,19
43:20

**clear (6)**
15:19 16:2 23:22
31:14 43:2 44:16

**clearly (2)**
6:15 20:21

**clears (1)**
44:22

**client (1)**
18:12

**close (1)**
39:17

**Cloud (2)**
5:21 15:22

**COC (1)**
11:11

**Coie (2)**
3:11 19:23

**colleagues (2)**
20:21 33:5

**color (1)**
41:19

**come (5)**
7:18 12:21 31:7
33:13 34:2

**comes (1)**
39:23

**coming (1)**

4:12

**committing (1)**
32:3

**company (1)**
24:12

**compel (3)**
3:4 8:1 40:15

**compelled (1)**
4:19

**complained (1)**
22:16

**complete (1)**
28:24

**completely (1)**
25:15

**compromise (1)**
36:10

**computing (2)**
5:21 15:23

**concern (1)**
29:14

**concerned (1)**
29:3

**condition (1)**
20:16

**conduct (2)**
4:4 32:1

**conducted (1)**
15:8

**conducting (2)**
4:22 14:20

**conduit (1)**
38:21

**conference (2)**
20:8 45:7

**confidential (10)**
5:3 6:2 8:20 11:24
13:3 22:13,18 23:20,
23 24:7

**confirmed (1)**

11:17

**confirms (1)**
11:7

**conflate (1)**
10:7

**conflating (1)**
10:4

**connection (1)**
43:17

**contained (1)**
42:16

**contemplating (1)**
29:21

**contends (1)**
22:18

**context (1)**
31:16

**continued (1)**
8:11

**controller (1)**
6:23

**conversation (2)**
5:14 36:11

**cooperativeness (1)**
37:15

**core (3)**
6:23 7:4,15

**correct (6)**
3:10 17:20 43:21
44:2,4,13

**could (8)**
13:22 21:4,4 24:6
27:3 32:1 33:9 44:23

**couldn't (1)**
33:13

**counsel (2)**
18:4 21:16

**counter (1)**
8:8

**couple (1)**

6:8

**course (1)**
27:1

**court (4)**
12:3,11 36:21 42:13

**creation (3)**
6:14 30:9 31:21

**custodian (2)**
4:16 9:1

**customer (1)**
25:24

**customers (9)**
7:17 8:4,14,18 9:11
13:2 22:7,7 24:14

---

# D

**date (4)**
4:24 5:20 16:13
19:15

**Day (14)**
18:4 21:5 31:7
32:24 33:5,8,10,12,14
34:18,19,19,24 35:8

**deadline (8)**
4:23 15:21,22
16:12 19:5 28:10,15
39:19

**deal (2)**
14:6,7

**December (9)**
14:22 15:18,24
16:15 28:10,16 29:16
39:22 43:12

**decided (3)**
18:5,13 19:23

**decision (2)**
15:23 43:14

**defamation (2)**
12:19,23

**defined (2)**
13:6,8

**definitely (1)**
26:18

**definition (2)**
13:5,12

**Degula (2)**
36:12,23

**D-e-g-u-l-a (1)**
36:24

**Dell (3)**
9:7,15 22:5

**denial (1)**
8:11

**denied (2)**
8:9 43:15

**deny (1)**
39:20

**denying (5)**
40:2 41:22 42:2
43:10,15

**department (1)**
38:19

**depose (2)**
40:21 44:10

**deposed (3)**
18:17 20:3 38:12

**deposition (17)**
14:23 18:9 32:22
33:6,12 37:23 38:14,
16,23 39:3,10 40:23
41:4 43:6,7,9 44:21

**depositions (19)**
8:11 15:8,10 17:2
18:6 19:6,12,16,24
34:12 35:2,8,10,15
37:9,19,24 40:1 44:1

**designate (1)**
44:19

**designated (2)**

33:1 44:11

**detailed (1)**
21:24

**details (2)**
7:6 27:6

**determine (1)**
16:15

**difference (1)**
29:8

**different (6)**
3:16 10:4 25:16,16
26:1,1

**dig (1)**
32:14

**digital (3)**
6:22,24 7:1

**director (2)**
36:18 38:3

**disagree (1)**
21:19

**disagreement (1)**
21:7

**disclosed (5)**
11:4,5 23:20 24:6
26:11

**disclosure (5)**
8:6,19 10:24 26:20
29:1

**disclosures (11)**
6:1 7:16,21 8:18
9:5 12:21 13:2 14:2
15:15,18 16:16

**discovery (26)**
3:2,4,21,21 9:17
12:6,7,12,13,23 13:1,
13 14:13 15:11 16:4,9
21:8,11 25:7,8 26:7
28:7,12 29:1,9 30:1

**discuss (1)**
23:14

**discussed (1)**
42:15

**disingenuous (1)**
20:6

**dispositions (1)**
20:12

**distinct (1)**
3:16

**distinction (1)**
29:17

**documents (1)**
14:20

**done (2)**
39:17 40:23

**down (2)**
21:6 42:8

**drastically (1)**
9:10

**during (2)**
18:17 21:11

## E

**each (1)**
31:15

**earlier (2)**
9:12 25:14

**early (3)**
12:5,7,11

**easiest (1)**
41:17

**effect (1)**
23:3

**either (2)**
24:12 45:8

**else (2)**
24:11 25:13

**email (18)**
6:13 11:6 13:20
22:3,10 25:3 30:17

31:20 34:2 39:21 40:4,
5,8,19 41:24 43:10
45:5,7

**emails (24)**
4:5,8,15,16,18,20
6:9 8:16 15:17 21:22
22:21,22 23:1,4,7,9
26:10 28:2 30:9,19
31:4,9,13,23

**emergencies (1)**
45:5

**employed (1)**
18:12

**employee (2)**
5:1 26:18

**employees (1)**
9:24

**end (2)**
21:5 28:11

**engineer (3)**
5:5,8 27:5

**engineering (9)**
6:19 7:8 23:10,11,
12 26:24 27:1,4,12

**entered (1)**
12:11

**entertain (1)**
40:13

**entire (2)**
5:2 16:9

**entirely (1)**
9:13

**entitled (4)**
12:22 15:15 40:18,
22

**essentially (3)**
20:20 21:15,16

**established (1)**
27:7

**Esterhay (38)**

3:7,9,10,18,24 4:13
17:5 18:23 19:2 21:1
22:24 23:19 24:16,19
28:8,19 29:12,20 30:6
31:11,19 33:4 34:15,
16 35:6,9 37:7,22
38:2,9 40:17 41:11,18
42:18,21 43:19 44:13
45:17

**ether (1)**
22:15

**even (8)**
6:7,15 10:10 11:7
20:2 25:21 31:2,17

**eventually (1)**
4:9

**ever (2)**
20:11 24:23

**every (1)**
30:17

**everybody (4)**
37:12 42:6,11 45:15

**everyone (2)**
26:13 45:20

**everything (4)**
10:7 42:4,19,22

**evidence (1)**
24:22

**exact (4)**
7:4 11:13 34:6,18

**exactly (2)**
10:14,19

**exaggerating (1)**
23:5

**exaggeration (1)**
31:6

**example (5)**
6:18 22:2 25:24
30:11 31:23

**examples (2)**

6:12 30:15

**except (1)**
34:13

**Excuse (1)**
16:19

**Exhibit (13)**
6:13 8:21 10:12
11:8,10 13:20,23 22:2
26:14,16 30:12 31:20,
23

**existed (1)**
8:10

**expands (1)**
9:9

**experts (1)**
23:15

**explanation (4)**
32:17 40:19,22 41:7

**extended (3)**
15:5,24 16:14

**extent (3)**
19:22 41:19 42:23

**extremely (1)**
7:10

### F

**face (2)**
20:9,9

**fact (13)**
7:15 8:24 13:18
21:17 24:4,5 29:11
33:11 34:16 36:17,18
37:4,15

**facts (1)**
36:14

**failing (1)**
27:6

**failure (1)**
21:13

**fair (2)**
34:4 45:2

**fairly (1)**
8:21

**fairness (1)**
19:20

**fall (1)**
33:23

**far (3)**
6:7 15:15,17

**February (1)**
21:10

**feeling (1)**
37:14

**fees (2)**
42:3 43:16

**few (1)**
30:15

**field (2)**
22:12,12

**finally (1)**
23:17

**find (1)**
34:18

**finding (1)**
27:19

**findings (1)**
34:3

**fine (2)**
16:11 42:8

**first (4)**
11:9 12:2 28:3
38:17

**five (1)**
3:15

**fixed (1)**
11:14

**flawed (1)**
28:23

**flight (1)**

37:10

**flying (1)**
34:9

**folks (1)**
37:16

**following (1)**
19:8

**force (1)**
23:21

**forget (1)**
34:17

**form (1)**
45:7

**forth (2)**
21:10 29:18

**forward (2)**
37:19 39:2

**found (2)**
40:12 41:13

**frankly (6)**
20:17 21:8 33:9,24
37:8,18

**frantically (1)**
42:9

**Friday (2)**
18:3 19:11

**friends (1)**
19:23

**FTS (1)**
6:14

**full (4)**
33:5,8,10,14

**full-day (1)**
18:9

**functions (1)**
6:24

**fundamental (1)**
21:6

**fundamentally (1)**
28:23

**further (4)**
7:13 11:7 21:9 44:6

**furthermore (2)**
26:9,23

### G

**gave (1)**
15:5

**generalizations (1)**
31:4

**generally (1)**
13:13

**germane (3)**
18:16 19:21 20:2

**getting (2)**
3:20 18:18

**give (4)**
15:2 20:13 32:16
41:2

**given (7)**
29:24 30:15 33:10
34:5 35:22 36:17
37:15

**gleaned (1)**
24:13

**goes (1)**
16:10

**going (39)**
7:12 14:15 16:23
17:8,11,19 18:7,8,10,
16 20:3,9,12,18 25:7
26:6 28:19 29:15 32:4,
20,22 33:2,15 34:10
36:8,16 37:1,2,19
39:8,9,13,15,20 40:22
42:12 44:8,21 45:2

**good (4)**
41:21,21 42:6 45:16

**gotten (2)**

15:11 34:8

**grant (1)**
27:22

**granting (3)**
43:3,5,7

**grossly (1)**
23:4

**guess (3)**
11:15 27:17 41:8

**H**

**half (1)**
33:12

**handful (1)**
23:3

**happened (5)**
11:13,17 17:22,24
27:16

**happens (1)**
37:12

**hear (1)**
10:16

**heard (12)**
8:1 10:22 11:16,20,
23 22:7,11 25:4,11,13,
21 38:17

**hearing (7)**
3:2 4:3 21:11 30:14
43:17 45:10,21

**hearings (2)**
31:8 42:1

**help (1)**
43:18

**helpful (2)**
3:19 42:24

**Here's (1)**
30:6

**hey (1)**
20:11

**hidden (1)**
13:14

**hide (1)**
16:4

**high (1)**
11:12

**highly (2)**
27:10 38:15

**himself (1)**
5:4

**hit (1)**
8:24

**Honestly (1)**
34:21

**Honor's (1)**
21:22

**hope (1)**
45:12

**hoped (1)**
36:11

**horse (3)**
17:16 28:1,21

**However (3)**
12:19 19:10 40:21

**HP (3)**
9:7,14 22:5

**hundreds (5)**
6:9 23:1,6 31:8,13

**hyperbole (1)**
31:6

**I**

**idea (5)**
26:15 36:13 41:12,
21,21

**identified (1)**
9:8

**imbedded (1)**
5:9

**implicated (1)**
30:20

**important (2)**
6:4 26:24

**inaudible (1)**
11:10

**include (1)**
30:17

**included (1)**
6:11

**includes (1)**
12:20

**including (1)**
18:6

**indicated (1)**
38:12

**indication (1)**
15:14

**individual (4)**
10:2 38:17 44:10,14

**information (31)**
5:11 9:22,24 12:19
13:2,4,5,6,8,9,18
21:12,13,18,21 22:13,
14,17,19 23:20,23
24:2,2,7,10,12,21
25:1 29:10 38:21
43:13

**Initially (3)**
8:7 32:21 44:21

**injunction (2)**
12:15,15

**in-person (2)**
4:3 30:14

**instance (1)**
6:13

**instances (1)**
28:22

**interested (2)**
26:19,20

**interesting (1)**
14:11

**interrogatories (12)**
8:3 9:4 15:16 18:1,
15,19 19:3,20 20:1
27:20 30:2 32:9

**interrogatory (17)**
7:23 8:5,10 9:14
14:17 15:1 17:12 19:9,
13 20:13 32:6 38:13,
22 39:14,16,24 43:5

**Intersil (36)**
4:4,14,17,20 5:9,11,
17,20,24 6:5,16,18,24
7:5,8,19 8:2,12 9:23
10:4,6 12:4 13:4,10,
11,12 17:10,12 24:3,
20 26:15 27:3 32:1
33:18 34:23 40:5

**Intersil's (12)**
3:5 4:7 5:1,2 8:23
9:13,21 12:22 14:11
16:1 28:22 38:19

**Inventek (4)**
10:17,23 25:14,22

**involved (3)**
12:10 24:1 30:17

**issue (36)**
4:1 5:3,5,23 6:7,14
7:15 10:5,6,21 11:4,7,
13,14,17,22,24 12:1
13:17,19,21 14:1
16:23,23 21:14 23:8,
11 25:15,24 30:8,10,
18,22 31:21 39:18
40:4

**issued (2)**
4:2 12:8

**issues (12)**
3:4,16 6:2 8:20

Monolithic Power Systems, Inc., v.
Intersill Corporation

10:10,17,19 17:3

22:11 25:20 33:24

34:6

**items (1)**

22:4

**itself (1)**

27:12

## J

**January (2)**

8:2 28:14

**Japan (3)**

32:23 33:7,11

**Japan's (2)**

33:1,4

**Jia (19)**

18:6,16 19:21

20:18 22:3 24:11 25:2

26:17 33:16 35:13,18

36:3,5 39:10 40:20,21

43:6,20 44:20

**Jill (1)**

45:8

**John (11)**

3:10 5:6 10:2,17

11:5,18 20:21 25:1,11

34:19 38:18

**Judge (4)**

21:9 28:5,12 29:7

**July (1)**

45:10

**June (6)**

16:11 18:17,20

34:24 35:1 45:4

## K

**keeps (1)**

29:12

**key (3)**

5:22 9:1 11:3

**kind (5)**

10:7 16:15 18:21

38:20 40:9

**knew (3)**

6:7 26:13,21

**knowledge (2)**

33:17 36:13

**known (2)**

9:13 25:3

## L

**lack (1)**

41:15

**last (7)**

4:2 21:22 31:11

34:3 36:24 37:17 40:3

**later (2)**

15:4 20:5

**latest (3)**

9:8 34:2 37:18

**law (1)**

38:4

**lawyer (1)**

40:7

**leading (1)**

14:20

**learn (1)**

7:9

**learned (2)**

5:5,7

**least (1)**

40:18

**leaves (1)**

40:3

**Lenovo (12)**

8:4,6,18,20 9:5,6,
12 13:18,21,22 26:10,

14

**Lenovo's (1)**

26:18

**letting (1)**

22:5

**level-headed (1)**

31:15

**light (1)**

43:14

**limited (8)**

12:6,7,12,18 15:19

16:7 33:7,23

**Lin (3)**

5:8,11 11:4

**line (1)**

34:5

**lines (1)**

5:23

**listed (1)**

13:6

**Lister (1)**

18:11

**litigators (1)**

37:11

**little (2)**

3:19 20:5

**located (3)**

40:6,9,16

**long (5)**

14:3 20:17 32:2,4,7

**longer (1)**

18:11

**look (1)**

10:11

**looking (1)**

21:17

**looks (1)**

3:15

**lot (2)**

14:13 20:9

**ludicrous (1)**

25:10

## M

**made (15)**

4:16 5:2 6:1,5 7:21

8:6 9:4 15:23 16:3,16

21:1 24:20 35:23 36:6,
7

**main (2)**

9:20 24:19

**major (1)**

22:6

**make (9)**

9:4 10:8 12:17

15:19 17:9 26:8 27:19

36:9 43:8

**makes (1)**

10:7

**making (5)**

3:6,7 11:19 25:19

40:7

**managed (1)**

42:22

**managing (2)**

37:5 38:3

**March (1)**

4:3

**marketing (1)**

5:1

**marketplace (5)**

22:20,23 24:13

25:4 26:13

**MASTER (41)**

3:1,2,14,23 4:10

16:21,24 17:6,17,21

19:1,17 20:23 24:15,

18 27:17 28:18 29:2,

14,23 30:24 32:2,16

34:14 35:5,20 36:4,19
37:6,21 38:7 39:4
40:24 41:20 42:10
43:1,23 44:5 45:1,15,
19

**materials (1)**
42:16

**matter (2)**
6:17 24:5

**max (1)**
23:5

**may (11)**
3:24 15:4,5 17:15
19:4,5,10 23:2 33:16
40:1 44:19

**maybe (3)**
20:4 32:11 41:17

**mean (1)**
25:10

**means (2)**
11:1 13:11

**meet-and-confers (1)**
7:23

**meeting (2)**
22:4 39:18

**Memorial (2)**
18:4 32:24

**mention (1)**
25:12

**mentioned (4)**
10:18 13:15 23:19
35:14

**messages (1)**
5:13

**method (1)**
6:20

**Micro (6)**
5:7,10 10:3,18
11:17 38:21

**Microsoft (9)**

**5:21** 6:2,20 7:17,20
8:14 9:10 15:20,21

**might (3)**
3:19 33:19 44:22

**minute (1)**
17:3

**misappropriated (1)**
27:9

**misappropriation (3)**
11:2 26:4 27:15

**misunderstanding (1)**
21:7

**mixed-signal (2)**
6:21 7:7

**mixing (1)**
7:3

**Mobile (1)**
6:20

**moment (3)**
16:20 17:1 37:17

**Monolithic (1)**
3:3

**months (1)**
6:8

**more (4)**
13:17 29:3 41:8
45:13

**Moreover (1)**
22:9

**most (2)**
12:4 18:15

**motion (5)**
3:3 6:12 8:1,9 31:17

**motions (1)**
42:1

**motive (2)**
7:12 27:7

**move (1)**
39:2

**MPS (31)**

**3:8,11,12** 6:20 7:1,
5,9 8:12 10:8 11:8,10
12:14,19,22,24 13:2,3,
5,5,8,9 21:14 22:6,11,
16,18 23:20,22 24:1
30:10 31:21

**MPS's (9)**
5:3 6:19 7:9,13
13:13,19 21:13 27:5
43:3

**much (1)**
21:3

**multiple (1)**
7:22

**myopic (1)**
27:10

**N**

**name (2)**
36:20,24

**named (1)**
5:6

**necessarily (1)**
29:15

**need (8)**
21:8 23:22 32:14
38:4 41:10 42:5,18
45:6

**needed (4)**
16:14 27:3,6 35:21

**needs (1)**
15:23

**negated (1)**
16:9

**never (8)**
11:14 13:4,11,15
18:20 20:14 25:8
34:11

**new (3)**

**33:24** 34:1 43:13

**next (4)**
19:11 32:12 39:17
45:10

**nice (1)**
45:20

**night (2)**
18:3 45:20

**nobody (1)**
20:11

**noise (1)**
4:11

**none (1)**
8:7

**non-public (6)**
11:24 12:18 21:13
29:10,18 30:5

**nor (2)**
20:15 22:15

**North (1)**
18:8

**Nos (1)**
27:21

**noted (1)**
45:2

**notes (1)**
42:8

**nothing (2)**
8:8 23:2

**notice (1)**
34:17

**notwithstanding (2)**
36:17 37:3

**November (13)**
4:23 5:16,18,19 6:3
15:20 16:12,13 22:9
23:21 28:15 39:22
43:11

**November-10th-to-22nd (2)**
4:6,21

**number (3)**

18:5 20:10 34:7

# O

**object (2)**

13:12 29:5

**objected (2)**

13:4,11

**objection (2)**

13:15 35:24

**objections (1)**

33:23

**obtain (2)**

7:11,13

**obtained (1)**

13:10

**obvious (2)**

8:22 9:6

**offer (1)**

6:21

**office (3)**

32:14 45:3,13

**officer (3)**

36:18 37:4 38:3

**off-limits (1)**

21:15

**once (2)**

20:11 44:22

**one (23)**

3:17 5:22 6:20 7:12
9:6,7 13:17 22:4
23:15,18 31:7,11,15
33:8,10,14 34:22
35:14 36:2 38:11,20
40:3 43:19

**one-sided (1)**

16:13

**only (11)**

6:1 7:20 8:9 11:16

19:20 20:2 24:24
25:17 33:12 34:4
39:11

**opportunity (3)**

18:21 30:1 34:6

**opposing (1)**

18:4

**opposition (1)**

23:14

**order (20)**

4:1,19 12:3,7,12
21:10 28:16 29:7,13,
13,19 31:6,24 37:24
39:9,13,15 40:11 42:6,
20

**originally (1)**

19:2

**other (11)**

7:17 8:14 9:11
16:16 20:7,24 30:19
31:13 33:23 35:10
44:22

**others (1)**

9:14

**out (16)**

7:18 12:21 18:13
21:21 22:15,19 24:9
26:5 34:2 36:9 37:16
39:23 41:8 44:8 45:2,
13

**outside (2)**

28:5 29:16

**over (6)**

6:22 11:15 15:11
20:3 32:23 33:6

**overstating (1)**

23:5

**overwhelming (1)**

37:14

**own (3)**

7:1 11:1 25:19

# P

**page (2)**

11:9 22:1

**part (4)**

12:6 14:1,2 30:21

**particular (4)**

21:23 23:18 36:3
41:23

**parties (1)**

12:13

**party (2)**

4:9 7:20

**Pegatron (7)**

10:5,17,23 11:14,
21 25:13,22

**perform (1)**

6:23

**perhaps (1)**

6:9

**period (7)**

4:6,21 6:3 16:10
21:23 28:11,12

**Perkins (2)**

3:10 19:23

**permitted (1)**

4:4

**personal (1)**

33:17

**pertains (1)**

43:4

**place (2)**

28:3 41:5

**plaintiff (3)**

3:3,11 21:17

**plaintiffs (1)**

36:12

**plaintiff's (3)**

21:15,20 36:20

**plan (1)**

44:20

**planning (1)**

18:18

**plans (2)**

13:12 18:14

**pm (1)**

45:22

**point (7)**

12:2,3 16:2 20:4
24:9,14 44:8

**position (3)**

35:6 38:10 40:2

**possession (1)**

24:3

**possible (1)**

44:18

**postpone (1)**

15:9

**postponed (1)**

19:7

**potential (1)**

9:11

**potentially (1)**

26:3

**Power (1)**

3:3

**PowerPoint (3)**

21:14 22:17 24:2

**predated (1)**

10:5

**prejudice (1)**

20:20

**presentation (3)**

6:14 30:10 31:22

**presume (2)**

3:7 45:9

**presuming (1)**

43:8

**pretenses (1)**
37:17

**prevent (1)**
28:24

**previous (1)**
28:16

**previously (2)**
14:16,18

**prior (5)**
29:19 31:24 32:5
35:22 41:24

**Probably (3)**
3:14 11:1 42:24

**problem (2)**
30:16 38:8

**problems (1)**
10:9

**proceed (1)**
19:15

**process (2)**
20:20 30:2

**produce (24)**
4:20 14:13,17,18,
19 18:2,2,8,11 21:22
25:7 26:7 27:13 32:21
33:2,8,15 34:10 36:12,
15,16 37:2,3,23

**produced (19)**
4:9,15 5:13 8:7,17
14:3 15:7 28:2 31:16,
22,24 38:24 39:1,9,10,
11,12 43:20 44:23

**producing (1)**
18:7

**product (8)**
6:19 7:9,14 13:9
23:10 25:16 26:1 27:5

**production (13)**
4:8 6:6 7:18 9:8,16
12:22 14:21 16:5 34:3

35:7 39:21 40:11,15

**productions (1)**
43:11

**productive (1)**
45:13

**promised (2)**
19:3,14

**prove (2)**
26:10 28:22

**proven (1)**
8:19

**proves (4)**
13:17,20,24 25:9

**provide (6)**
5:10 15:13 41:2,7,
18 42:13

**provided (3)**
5:12,16 19:4

**public (21)**
9:22 10:24 13:17,
22 14:1 21:12 22:8,14
24:22,23 25:5,9,17,22
26:8,12,22 29:10,17,
21 30:5

**public/non-public (1)**
30:8

**publicly (1)**
21:18

**public-versus-non-public (1)**
30:23

**pull (1)**
18:13

**pulled (1)**
37:16

**pursue (3)**
12:13,14,23

**pushing (1)**
28:14

**put (1)**
25:3

**putting (3)**
17:15 27:24 28:20

# Q

**question (5)**
8:12 27:18 30:23
33:22 41:8

**questions (1)**
44:6

**quickly (1)**
42:12

**quite (5)**
20:17 33:9,24 37:8,
17

**quote/unquote (2)**
22:12 25:18

# R

**raised (1)**
3:15

**rather (5)**
13:3 14:5,7 23:13
33:20

**ready (2)**
3:13 37:10

**real (1)**
19:22

**really (6)**
20:5 21:6 22:17
29:11 30:5 37:18

**reason (6)**
4:7 6:4 7:1 9:15
13:16 37:22

**reasoning (3)**
4:13,23 5:17

**recall (4)**
4:1 7:24 34:19,22

**received (6)**

7:20 10:3 19:9,13
33:20 40:20

**receiving (1)**
34:22

**recently (1)**
12:21

**recognize (1)**
39:6

**reconsider (2)**
40:1 43:12

**reconvened (1)**
35:16

**record (3)**
21:16 23:3 24:9

**referenced (1)**
31:12

**referred (2)**
23:24 30:16

**referring (1)**
29:12

**refused (3)**
8:2,12 36:15

**regard (4)**
16:17 26:23 35:6
42:14

**related (10)**
3:4 11:22 12:5,13,
16 24:12 25:20 29:9
33:14 34:22

**relates (2)**
11:16,18

**relatively (1)**
16:6

**relevance (17)**
3:5 4:5,18,22 6:11,
16 8:23 14:5,21 16:1,
8 21:23 28:23 29:6
30:11,21 32:1

**relevant (14)**
4:18 6:10,15 7:10

16:4 23:2 27:10,14
29:1 30:19 31:9 38:14,
16,23

**relief (1)**
16:7

**relies (1)**
12:4

**relinquishing (1)**
35:11

**reluctant (1)**
28:4

**reminds (1)**
30:13

**Renesas (4)**
32:23 33:1,3,11

**re-open (4)**
32:22 33:5,18 34:11

**re-opened (3)**
20:19 33:21 34:23

**reporter (2)**
36:22 42:13

**representation (6)**
17:10 32:6 35:23
36:8 39:8 40:8

**represented (2)**
20:15 43:24

**reproduce (2)**
18:2 33:3

**request (11)**
13:13 35:11,19
39:20 41:22 42:2 43:3,
6,7,10,16

**requested (2)**
3:22 27:20

**requests (1)**
13:1

**resent (1)**
29:11

**reserve (1)**
44:18

**respond (7)**
18:24 24:16 31:3,3
32:5,8 41:10

**responded (1)**
26:17

**response (3)**
8:5 19:18 31:15

**responses (18)**
7:24 9:3,14 14:17
15:1,2 17:12 19:10,14
20:13,14 32:7 38:13,
22 39:14,16,24 43:5

**resummarize (1)**
43:2

**reverse (10)**
6:19 7:8 23:9,10,12
26:24 27:1,4,5,11

**review (16)**
3:5 4:5,18,22 6:11
8:23 14:5,21 16:2,8
21:24 28:23 29:6
30:11,21 32:1

**reviewed (2)**
8:24 9:2

**right (4)**
13:7 14:7 40:2
44:18

**Roger (2)**
8:13 32:21

**rolls (1)**
21:21

**rug (2)**
18:13 37:16

**ruled (2)**
28:6,12

**ruling (1)**
21:22

## S

**said (8)**
8:5 20:11 22:11
26:9,18 30:8 33:8
41:11

**sales (3)**
5:2 23:21 38:19

**same (8)**
8:15 10:21 11:4,13
25:6 30:22 36:10 38:8

**sanctions (3)**
41:22 42:3 43:16

**Saville (6)**
17:15 31:18 32:12
36:3 37:13 44:8

**saying (2)**
25:6 41:16

**scam (1)**
29:6

**scheduled (5)**
19:8,12,16 35:3
37:9

**scope (10)**
6:6 9:9 15:13 16:3
21:8,10 28:5,6 29:9
30:16

**scuttlebutt (2)**
22:8,14

**search (1)**
9:1

**second (3)**
9:19 12:3,24

**Secondly (1)**
23:8

**secret (8)**
12:16,17 23:11,12
27:2,9,13,15

**secrets (4)**
7:4,13 11:3 26:4

**seeking (1)**
9:17

**seem (2)**
9:4 10:8

**seemed (1)**
16:13

**seems (2)**
10:20,21

**sense (3)**
10:7 12:17 26:8

**sent (3)**
22:10 32:7 42:16

**separate (1)**
10:10

**separately (1)**
11:1

**September (1)**
5:12

**series (1)**
19:24

**serve (2)**
34:17 38:5

**served (2)**
12:24 34:20

**service (1)**
38:6

**set (3)**
8:20 11:12 29:18

**setting (1)**
21:10

**settlement (1)**
20:8

**sham (5)**
3:5 8:23 14:5 28:24
29:11

**shocking (1)**
14:6

**shows (4)**
8:17 26:14,17 27:2

**side (5)**
4:24 5:18,19 6:3
11:12

**similar (1)**
  10:19

**simply (1)**
  15:24

**single (1)**
  30:17

**situations (1)**
  11:11

**smoke (1)**
  44:22

**sold (1)**
  6:19

**solely (2)**
  12:5,15

**solution (4)**
  6:21 7:1,3,7

**somehow (3)**
  9:22 11:22 25:20

**someone (1)**
  33:16

**something (10)**
  10:23 11:20 25:13
  39:23 40:12,15 41:1,9
  45:6,13

**sooner (1)**
  42:24

**sorry (3)**
  17:5 19:7 44:15

**sound (1)**
  41:14

**source (9)**
  9:23 24:22,24,24
  25:5,9,18 29:22 38:20

**speaking (1)**
  42:9

**SPECIAL (41)**
  3:1,2,14,23 4:10
  16:21,24 17:6,17,21
  19:1,17 20:23 24:15,
  18 27:17 28:18 29:2,

  14,23 30:24 32:2,16
  34:14 35:5,20 36:4,19
  37:6,21 38:7 39:4
  40:24 41:20 42:10
  43:1,23 44:5 45:1,15,
  19

**specific (2)**
  3:21 15:21

**specified (1)**
  29:8

**spell (1)**
  36:21

**spellings (1)**
  42:14

**spirit (1)**
  36:10

**spread (1)**
  38:18

**standing (2)**
  26:4 29:7

**Stark (2)**
  28:5,12

**Stark's (1)**
  21:9

**Starry (20)**
  5:2,15 10:1 23:19
  24:6,10 25:2,19 26:17
  35:13,17 36:6,9,16
  37:3 38:1,8 39:8,11
  43:8

**start (2)**
  10:14 19:8

**started (2)**
  3:13 26:15

**starting (1)**
  14:24

**stated (3)**
  21:12,16 22:3

**statement (2)**
  8:8,10

**states (1)**
  11:8

**stating (1)**
  22:10

**status (1)**
  35:16

**stems (1)**
  4:1

**step (1)**
  7:13

**STF (2)**
  11:12,16

**still (3)**
  19:13 33:20 34:8

**stolen (1)**
  7:5

**stop (1)**
  16:24

**strip (1)**
  16:3

**subject (2)**
  6:16 41:24

**subpoena (1)**
  38:5

**Super (6)**
  5:7,10 10:3,18
  11:17 38:21

**supplement (2)**
  17:11 18:1

**supplemental (6)**
  20:14 38:13 39:14,
  16,23 43:4

**supplementing (1)**
  27:19

**supplements (1)**
  15:3

**supposed (2)**
  15:3,7

**Sure (11)**
  3:18,23 4:11 10:13,

  14,19 35:16 36:23
  40:11,14,17

**surprise (1)**
  13:14

**suspected (1)**
  9:12

**sworn (2)**
  8:5,9

**Systems' (1)**
  3:3

---

**T**

**Taiwan (2)**
  5:6 22:20

**taking (2)**
  28:3 42:8

**talk (1)**
  45:9

**talked (3)**
  10:15,15 22:24

**talking (4)**
  3:12 15:14 23:6
  34:9

**team (1)**
  5:3

**telephone (1)**
  45:7

**telling (2)**
  26:16 39:7

**ten (1)**
  22:4

**terms (1)**
  9:1

**testified (6)**
  5:4 10:1,11,13 25:2,
  10

**testimony (1)**
  10:12

**text (1)**

**Monolithic Power Systems, Inc., v.**
**Intersill Corporation**

5:13

**their (5)**
7:12 10:19 23:9,15
40:10

**There (23)**
6:8 7:16 8:6,17,19
9:5 17:1,10,17 20:8,
19 22:10,15,19 24:22
26:5,9 30:9,19 31:8
37:22 39:7 45:4

**they (21)**
7:11 11:14 14:12,
16,17,19 15:2,6 18:12
19:2 20:1 35:23 36:7,
15 37:1 38:4,10,11,24
39:1 44:9

**thing (4)**
24:20 28:9 30:7
38:11

**things (4)**
7:10 18:22 28:3
31:11

**think (27)**
3:18 4:2 8:1 21:3,5
23:4,13,22,23 24:4,8
31:5 32:17 34:4 35:9
39:5,6 40:3,18 41:2,
23 42:7,21 43:24 45:3,
9,10

**thinking (1)**
36:5

**third (2)**
4:9 35:7

**third-party (1)**
4:15

**though (1)**
30:7

**thought (1)**
16:22

**thoughts (1)**

44:23

**thousands (4)**
6:9 23:1,7 31:9

**three (2)**
31:14,16

**throughout (4)**
5:24 7:19 12:4 31:5

**till (1)**
32:11

**timely (1)**
38:24

**times (3)**
7:22 20:10 34:7

**today (4)**
3:12 42:2,5 43:14

**together (1)**
10:8

**told (2)**
13:19 39:1

**tomorrow (1)**
32:13

**took (1)**
33:12

**topic (1)**
41:16

**topics (2)**
33:21 34:1

**touch (1)**
21:3

**trade (12)**
7:4,13 11:2 12:16,
17 23:11,12 26:4 27:2,
9,12,15

**transcript (2)**
42:11,23

**travel (1)**
18:14

**TRAVISANO (32)**
16:19,22 17:4,8,14,
19,23 19:18,19 21:2

29:4 31:1,2 32:3,10,
20 34:21 35:1 36:1,2,
8,23 37:8 41:1,6 42:7
44:2,3,7,17 45:11,18

**trouble (1)**
22:6

**true (2)**
9:23 38:15

**trust (1)**
16:1

**try (5)**
21:3 24:20 42:11,
12 43:1

**trying (3)**
14:15 27:4 34:18

**Tsai (28)**
5:2,4,15,16 10:1,10,
22 11:5,8,19 23:19
24:6,10 25:2,4,19
26:17 35:13,17 36:6,9,
16 37:3 38:1,8 39:8,
11 43:8

**Tsai's (2)**
10:12 11:6

**turn (1)**
5:6

**twice (1)**
28:21

**TWM (1)**
11:16

**two (5)**
20:4 24:4 25:20
28:2 31:14

**type (3)**
5:10 41:3 43:16

**U**

**ultimately (1)**
35:3

**unable (2)**
19:15 39:2

**under (7)**
4:18 6:10 8:22
18:13 30:11 37:17
38:4

**understand (7)**
14:14 15:12 35:12,
21 37:13 42:20,22

**understanding (4)**
22:21 30:4 43:22
44:9

**understood (1)**
24:1

**unlawfully (1)**
27:8

**unrelated (1)**
25:15

**until (4)**
20:3 26:11,15 45:3

**up (7)**
4:7 18:22 19:24
20:12 28:14 34:12
35:4

**upon (4)**
22:20 34:3 36:13
41:11

**used (1)**
5:8

**V**

**versus (1)**
29:17

**via (1)**
38:21

**viewed (2)**
20:15,17

**Vincent (1)**
5:8

Monolithic Power Systems, Inc., v.
Intersill Corporation

## W

**wanted (3)**
9:20 33:5 44:9

**way (5)**
16:1,10 20:22
41:15,17

**ways (1)**
39:5

**Wednesday (2)**
32:11 39:17

**week (9)**
18:17,19 19:8,11
20:7 32:12,13,24
37:20

**weekend (1)**
18:4

**weeks (2)**
20:4 24:4

**Wei (20)**
18:6,16 19:21
20:18 22:3 24:11 25:2
26:17 33:16 35:13,18
36:3,5 37:24 39:10
40:20,21 43:6,20
44:20

**Wendelken (7)**
8:13 14:23 18:9
32:21 33:15 34:13
35:19

**Wendelken's (1)**
35:7

**whatever (1)**
11:21

**What's (2)**
19:17 35:6

**whenever (1)**
31:7

**Who's (2)**

3:6 18:11

**widely (1)**
23:23

**win (1)**
7:2

**withdraw (1)**
35:19

**withheld (6)**
6:10 8:22 9:3 14:4
30:10,20

**withholding (5)**
4:8,14,17 31:10,13

**without (4)**
4:21 21:23 28:2
32:3

**witness (18)**
8:13 14:19 16:18
19:22 20:2 27:23 30:3
32:18 33:2,6 35:18
36:20 41:11 43:21
44:12,15,19,24

**witnesses (2)**
18:3 42:15

**wonder (1)**
27:24

**wondering (1)**
29:24

**word (1)**
40:10

**work (1)**
5:8

**working (1)**
37:14

**wound (1)**
18:22

**wrapper (1)**
6:22

## Y

**year (7)**
10:6 11:13,15,21
14:8 15:12 25:14

## 1

**10th (6)**
4:23 5:16,18 16:12,
13 23:21

**11 (3)**
8:21 13:20 26:16

**12 (2)**
13:23 26:14

**12th (1)**
32:11

**14 (1)**
22:2

**14th (2)**
15:4 19:4

**15 (2)**
27:21,21

**15th (1)**
22:9

**17 (1)**
10:12

**19 (2)**
27:21,21

**1st (1)**
16:11

## 2

**2016 (3)**
5:13 16:11,13

**2017 (1)**
28:14

**2018 (1)**
23:21

**21st (3)**
15:5 19:5 21:10

**22 (1)**
27:21

**22nd (4)**
5:19 6:3 15:20
28:15

**23rd (3)**
4:3 39:22 43:11

**24 (1)**
27:21

**25th (1)**
19:10

**28th (1)**
45:4

**2nd (1)**
45:10

## 3

**3 (5)**
6:13 17:3 30:12
31:20,23

**30b6 (25)**
8:13 14:18 16:17
19:22 20:19 27:23
30:3 32:18 33:1,4,11,
17,18,21 34:10,17,23
35:12,18 41:16 43:21
44:12,15,19,24

**31st (9)**
14:22 15:18,24
16:15 28:10,16 29:16
39:22 43:12

## 4

**4 (1)**
17:3

**4th (4)**
18:17,20 34:24 35:1

**5**

**5 (1)**

17:3

**6**

**6 (1)**

22:1

**6:27 (1)**

18:3

**7**

**7:36 (1)**

45:22

**9**

**9 (2)**

11:8,10