IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONOLITHIC POWER SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 16-1125-LPS |
| v. | ) | |
| | ) | |
| INTERSIL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF MONOLITHIC POWER SYSTEMS, INC.'S OBJECTION TO THE
SPECIAL MASTER'S JUNE 12, 2018 ORDER REGARDING
<u>INTERSIL'S E-MAIL PRODUCTION</u>**

*Of Counsel:*

PERKINS COIE LLP

John P. Schnurer
John D. Esterhay
11988 El Camino Real, Suite 350
San Diego, CA 92130-2594
(858) 720-5700
jschnurer@perkinscoie.com
jesterhay@perkinscoie.com

Bobbie Wilson
505 Howard Street Suite 1000
San Francisco, CA 94105
(415) 344-7000
BWilson@perkinscoie.com

Dan L. Bagatell
3 Weatherby Road
Hanover, NH 03755–1923
(602) 351-8250
DBagatell@perkinscoie.com

ASHBY & GEDDES
John G. Day (#2403)
Tiffany Geyer Lydon (#3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff
Monolithic Power Systems, Inc.*

Dated:  July 6, 2018

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND .......................................................................................................... 2

        A.      The Court's September 11, 2017 Order on Intersil's Relevance Review .............. 2

        B.      The Special Master's March 23, 2018 Order on Intersil's Relevance
                Review .................................................................................................................. 4

        C.      Intersil Continues to Hide Critical E-mail Discovery from Production ................ 5

III.    ARGUMENT ................................................................................................................ 7

        A.      Intersil's Additional Disclosures Are Not from Public Information ..................... 8

        B.      The Public/Nonpublic Distinction Ignores MPS's Defamation Claim .................. 9

        C.      The Additional Disclosures Were Not the Only Withheld Discovery ................. 10

        D.      This Narrow Request is Not Overly Burdensome or Disproportionate ............... 10

IV.     CONCLUSION ........................................................................................................... 10

Pursuant to the Court's Order Appointing Special Master (D.I. 129 ¶ 6), MPS objects to portions of the Special Master's June 12, 2018 order for the reasons that follow.

## I. INTRODUCTION

Special Master Saville committed clear error by denying MPS's motion to compel Intersil to produce all non-privileged e-mail returned by agreed-upon search terms/custodians without conducting a "relevance review" to cull that production for the period of November 22 to December 31, 2016, after the Special Master previously acknowledged the severe problems with Intersil's relevance review by granting such a request for November 10-22, 2016.  (D.I. 190 [Ex. 26] at 24:19-32:1, 39:20-40:2.)  The Court should overturn that order and compel that production.

Throughout this case, MPS has been forced to file motion after motion for the most basic e-mail discovery, due to Intersil utilizing every procedural mechanism possible to impede that process.  As Intersil's compelled e-mail production has trickled out, it has become apparent that the "relevance review" Intersil was using to cull its e-mail production returned by agreed-upon search terms/custodians was inappropriately narrow.  MPS moved early in the case for an order prohibiting Intersil from using its "relevance review" to cull its e-mail production, but the Court held on September 11, 2017 that Intersil could conduct a relevance review "assuming you [Intersil] are taking an appropriate view of relevance."  (D.I. 127 [Ex. 11] at 15:9-18.)

The Court's reasoning was based on the assumption that Intersil was conducting an appropriate relevance review.  That assumption has now been proven to be mistaken.  The true scope of the deficiencies in Intersil's e-mail production would have remained hidden if not for two events outside of Intersil's control.  First, MPS subpoenaed Intersil's outside sales representative, Peter Groome of Cascade, for relevant documents.  Mr. Groome, not tuned-in to Intersil's "relevance review," produced hundreds of relevant e-mails between himself and Intersil e-mail custodians that should have been produced by Intersil, but were not.  (Ex. 19 at 1-2.)  Second, based on these e-mails, and a growing doubt in the veracity of Intersil's assurances, the Special Master on March 23, 2018 ordered Intersil to produce all non-privileged e-mail returned by search terms/custodians without a relevance review in the November 10–22, 2016 timeframe.

(D.I. 172 [Ex. 20] at 30:4-31:5.)  MPS narrowed its request to between Nov. 10 (when MPS's confidential information was apparently first spread to Intersil's sales team (Ex. 7)) and Nov. 22 (█████████████████████████████████████) due to Intersil's claims throughout the case that it only made disclosures to Microsoft and no other companies.

That compelled production revealed hundreds more relevant e-mails that should have been produced earlier in the case, including evidence of Intersil disclosing MPS's confidential information (and defamatory statements about that information) to additional customers beyond Microsoft like Lenovo (Ex. 28 at 8433), HP and Dell (Ex. 29 at 7707), contrary to Intersil's previous claims.  Given the new disclosures revealed in just the Nov. 10-22, 2016 period, MPS believes Intersil is still using its "relevance review" to hide disclosures to other companies beyond Nov. 22, as that date only applied to Microsoft.  As a result, MPS moved the Special Master to expand her prior order to include the November 22-December 31, 2016 timeframe.

On June 12, 2018 the Special Master denied this request, finding the newly revealed disclosures could have come from "public" information.  (D.I. 190 [Ex. 26] at 29:14-30:5.)  This finding is erroneous for three reasons.  First, all existing discovery confirms the information in Intersil's additional disclosures came from the same non-public source at Supermicro as the disclosures to Microsoft.  Second, MPS has a defamation claim based on these additional disclosures for which MPS is entitled to discovery regardless of whether the information came from a public source.  Third, the limited period of production ordered by the Special Master reveals problems with Intersil's "relevance review" unrelated to the additional disclosures.  Finally, this is not a burdensome or disproportionate request, due to the limited time period, which Intersil's April 13 production shows will only encompass a couple thousand e-mails.

## II.   BACKGROUND

### A.   The Court's September 11, 2017 Order on Intersil's Relevance Review

Intersil's e-mail production has been deficient since the beginning of this case, forcing MPS to file motion after motion just to get the most basic discovery.  At first, Intersil unilaterally limited all discovery to only the "MPS Issue" presentation, forcing MPS to move to compel.  On

February 21, 2017, the Court granted MPS's motion and held discovery "is not limited to just" the "MPS Issue" presentation, but instead encompasses "communications and documents that Intersil received and/or sent out that contain nonpublic information of MPS's about that MPS failure." (D.I. 47 [Ex. 1] at 28:4-30:25.)  The Court also ordered Intersil to use the search terms "MPS and "Monolithic" (*id.* at 18:21-23) in the period of "June of 2016 through December of 2016."  (*Id.* at 29:23-30:9.)  During the motion hearing, Intersil represented to the Court that it had already produced "all communications relevant to" the MPS Issue presentation.  (*Id.* at 16:15-23.)  This representation was proved inaccurate with Intersil's next production on March 17, 2017.  (*E.g.*, Ex. 2 (e-mail discussing "MPS Issue" presentation).)

Intersil then refused to comply with the District's Default Standard for Discovery's procedures for ESI discovery, forcing MPS to move to compel again.  (D.I. 66 [Ex. 3] at 1.)  On May 4, 2017, the Court granted MPS's motion by ordering Intersil to comply with "the District's Default Standard for Discovery['s]" procedures on search terms and custodians.  (D.I. 76 [Ex. 5].)  In response to the Court's May 4 order, Intersil certified on May 9, 2017 it ran the Court-ordered keywords "MPS" and "Monolithic" for certain initial custodians (like Intersil employees Ken Coffman and John Chuang) and "[a]ll responsive documents derived from these searches have been produced."  (Ex. 6.)  This representation was also proven wrong by Intersil's next production on July 21.  (*E.g.*, Ex. 7 (e-mail with "MPS" keyword, received by Ken Coffman).)

Intersil subsequently agreed to run 10 additional search terms proposed by MPS beyond the Court-ordered terms,[1] as well as additional document custodians beyond the initial set.[2] However, because Intersil was still withholding relevant ESI discovery, MPS was forced to move to compel once again, seeking Intersil's production of ***all*** non-privileged hits on the search terms, without culling for relevance.  MPS noted in its motion that the volume of returned e-

---

[1] These additional ten terms are: "Tien; Dobelstein; Mohammad; Corey; Yazdani; Chung; Jiang; fail; heat; design," plus Chinese translations of the latter three.  (Ex. 8 at 3-4.)

[2] The Intersil custodians are: John Chuang; Ken Coffman; Starry Tsai; Jia Wei (Ex. 6); Joell Gardner (Ex. 8 at 3); Roger Wendelken; Michael Chiu; David Dotter; Brian Wan.  (Ex. 10 at 3.)

mail—which Intersil claimed was "just under 13,000" hits—was not large. (D.I. 116 [Ex. 9] at 2.) But the Court held on September 11, 2017 that Intersil could conduct a relevance review "assuming you [Intersil] are taking an appropriate view of relevance." (D.I. 127 [Ex. 11] at 15:9-18.) The Court's reasoning was based on what has now been shown to be a mistaken assumption that Intersil was conducting an appropriate relevance review.

### B. The Special Master's March 23, 2018 Order on Intersil's Relevance Review

Intersil has not conducted an appropriate relevance review, and instead used its relevance review to hide critical discovery throughout this case. While the deficient nature of Intersil's e-mail production has long led MPS to suspect Intersil's relevance review was inappropriate, this was confirmed without doubt when Intersil's third-party sales agent Cascade was subpoenaed and produced hundreds of relevant e-mails that Intersil had previously withheld, all including at least one Intersil document custodian and search term. Cascade (through its employee Peter Groome) acts as Intersil's sales agent to the Microsoft groups relevant to this case. In response to MPS's subpoena, Cascade produced 237 Intersil e-mails—84% of Cascade's entire production from the June-December 2016 discovery period—which were never previously produced by Intersil. In fact, the new 237 Intersil e-mails from Cascade almost doubled Intersil's e-mail production, as Intersil at that point had only produced 317 e-mails. (Ex. 19 at 6.)

Every single one of the previously-withheld 237 Intersil e-mails included at least one Intersil document custodian (such as Joell Gardner, David Dotter, and others), and at least one search term that Intersil claims to have searched (often "MPS" but sometimes others), meaning that Intersil must have reviewed these e-mails for "relevance" and intentionally excluded them. (*E.g.*, Exs. 17-18.) The subject matter of these previously-withheld e-mails was almost entirely about Intersil's competition with MPS for business from Microsoft's Cloud Computing and Mobile groups, which is the subject of this case. (*E.g.*, *id*.) These e-mails confirmed that Intersil has been conducting an impermissibly narrow relevance review to exclude relevant discovery.

As a result of these newly revealed e-mails, on March 9—prior to the scheduled close of fact discovery on March 30 (Exs. 22-23)—MPS moved the Special Master to compel Intersil to

produce *all* non-privileged e-mails hit by search terms/custodians without conducting a relevance review to narrow that production during a critical 13-day period of time: November 10-22, 2016. MPS requested this time period beginning when Intersil's sales team first formed a false belief that MPS's products required an "all layer design change" (Ex. 7 at 4175), and ending when the ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████. MPS made this request as narrow as possible by only seeking relief through November 22, 2016—a key date relevant only to Microsoft—because up to that point, Intersil claimed it only disclosed MPS's confidential information (along with defamatory statements) to Microsoft. (Ex. 19 at 1-8.)

On March 23, 2018, the Special Master granted MPS's motion by compelling Intersil to produce all non-privileged e-mail returned on custodians/search terms for the November 10-22, 2016 period, without culling for "relevance." (D.I. 172 [Ex. 20] at 11:19-30:19.)

**C.    Intersil Continues to Hide Critical E-mail Discovery from Production.**

Intersil produced that compelled e-mail on April 13—after the scheduled close of fact discovery on March 30 (Exs. 22-23)—and that production contains hundreds of e-mails in that short period further evidencing that Intersil's "relevance review" had been a sham.

For example, Intersil previously withheld crucial communications about the genesis of its "MPS Issue" presentation. (Ex. 21.) Intersil also previously withheld critical e-mail about its reverse engineering of MPS's mixed-signal MPS86901 product for which MPS was awarded the Microsoft Mobile business over Intersil, and which Intersil was trying to win back with its disclosure of the "MPS Issue" presentation to Microsoft. (Ex. 24 at 6732.) Intersil's reverse engineering of MPS's mixed-signal product is crucial to this case because it was mere days after that reverse engineering was completed that Intersil decided it needed to instead misappropriate MPS's trade secrets on its mixed-signal solution, and put those trade secrets (along with defamatory statements about them) in the "MPS Issue" presentation that Intersil disclosed to

Microsoft.[3]  (*See, e.g.*, Ex. 25 at 2-3 (discussing the independent economic value of maintaining the confidentiality of MPS's mixed-signal design).)  These are but two of the most glaring examples of Intersil using its "relevance review" to hide key discovery, among many others.

However, even more significantly for the scope of the case, Intersil's April 13 production revealed for the first time additional disclosures by Intersil of MPS's confidential information (and defamatory statements about that information) to customers besides Microsoft.  Throughout this case, Intersil repeatedly made the claim in briefs (Ex. 27 at 3), verified discovery responses (Ex. 4 at 7), and hearings (Ex. 13 at 60:19-61:5), that Intersil never shared MPS's information with anyone besides Microsoft.  For example, Intersil's verified response to MPS's Interrogatory No. 23—seeking identification of Intersil's communications with Lenovo regarding MPS Information[4]—made the following claim: "Intersil states that no such communications exist, as it has stated numerous times before in response to numerous previous discovery requests."  (Ex. 4 at 7.)  Intersil then used these verified responses to close off all discovery on any customers other than Microsoft.  For example, when MPS moved to compel further discovery on Google and Lenovo, Intersil's counsel used the verified interrogatory response to claim "there is no evidence in this case whatsoever that any of this information was given to Google or Lenovo."  (Ex. 13 at 60:19-61:5.)  On the basis of this representation by Intersil's counsel, the Special Master denied MPS's motion to compel, holding that "I still think it's a reach given the certified interrogatory responses, so I'm denying that request."  (*Id.* at 65:12-19.)

Intersil's April 13 e-mail production proved the verified interrogatory responses false.

---

[3] Intersil has still not produced the e-mail attachment with Intersil's reverse engineering results (Ex. 24 at 6732), claiming that attachment no longer exists, despite the underlying e-mail still existing.  At the June 12 hearing, the Special Master compelled Intersil to provide an explanation of *why* the attachment no longer exists, on which MPS is still waiting.  But it is worth noting that Intersil has repeatedly withheld e-mail attachments, forcing MPS to move to compel their production no fewer than *five times*, despite the Court's September 11, 2017 order holding that if Intersil "ha[s] determined the e-mail is relevant, then the attachment is to be produced."  (D.I. 127 [Ex. 11] at 19:1-14; *see also* Ex. 12 at 10:1-17, Ex. 13 at 36:17-39:10, Ex. 14.)

[4] "MPS Information" is defined as "any information about MPS, its products, or its business obtained by Intersil by any means" and Intersil never objected to this definition.  (Ex. 16 at 1.)

Intersil *did* disclose information about the MPS failure issue to Lenovo, (Ex. 28 at 8433), and likely to Dell and HP as well.  (Ex. 29 at 7707.)  The case with Lenovo is particularly telling.  After Intersil's John Chuang misappropriated MPS's confidential information about the failure issue from Supermicro's Vincent Lin (a former Intersil employee)   Thus Intersil's verified response to MPS's Interrogatory No. 23 was untrue.  (Ex. 4 at 7.)  So too was Mr. Tsai's sworn deposition testimony

The parties are currently engaged in extended discovery made necessary by Intersil's belatedly-revealed disclosures, and the Court just modified the case schedule to accommodate that discovery as well as supplemental damages reports.  (D.I. 195.)  However, when MPS moved the Special Master to extend her March 23 order by precluding Intersil from performing a relevance review in the November 22-December 31, 2016 period, the Special Master in a June 12 hearing denied MPS's motion based on a finding that Intersil's additional disclosures could have come from "public" information.  (D.I. 190 [Ex. 26] at 29:14-30:5.)  This order was served on Friday, June 15, followed by MPS's timely objection.

### III.   ARGUMENT

The Special Master committed clear error by refusing to extend her March 23, 2018 order compelling the production of all non-privileged e-mail returned by custodians/search terms in the November 10-22, 2016 period to December 31, 2016.  Her March 23 order already recognized the severe deficiencies in Intersil's so-called "relevance review" (D.I. 172 [Ex. 20] at 11:19-

30:19), which were further confirmed by the April 13 production, demonstrating without a doubt that Intersil is using its "relevance review" to hide relevant discovery. The Special Master's reasoning not to extend the March 23 order from November 22 to December 31—that Intersil's newly revealed disclosures could have come from "public" as opposed to "nonpublic" information (D.I. 190 [Ex. 26] at 29:14-30:5)—is faulty for three reasons explained below.

A. **Intersil's Additional Disclosures Are Not from Public Information.**

The Special Master's order relies on a faulty premise because discovery conclusively establishes that Intersil obtained its information about MPS's confidential failure issue via a Supermicro employee named Vincent Lin, who was formerly a Technician at Intersil for nine years, where he had been supervised by Intersil's John Chuang. As early as September 20, 2016, Intersil's Mr. Chuang induced Supermicro's Mr. Lin to give Intersil MPS's confidential information about the failure issue by LINE text message, which Mr. Lin provided in violation of Supermicro's confidentiality obligations to MPS. (Ex. 31, translation.)

Both John Chuang and Starry Tsai testified ██████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
                    ████████████████████████████████
████████████████████████████████████████████████████████████

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████ However, the Special Master's order excluding discovery on this ground is in effect an improper dispositive order on MPS's trade secret claim about those disclosures, foreclosing MPS from pursuing those claims.

### B. The Public/Nonpublic Distinction Ignores MPS's Defamation Claim.

Even if Intersil's additional disclosures were found to be based on public information—which they are not, as noted above—that would not impact MPS's defamation claim on the same disclosures. Intersil's false statement to Lenovo, HP, and Dell that MPS's products require an "all layer design change" (Ex. 28 at 8433, Ex. 29 at 7707), is the same false statement that Intersil made to Microsoft (Ex. 32), and is the primary basis of MPS's defamation claim. That statement was blatantly false, and damaging to MPS, as discussed in detail in MPS's technical expert report. (*E.g.*, Ex. 33 ¶¶ 88-108, 130, 140-41, 147-52.) Mr. Tsai himself confirmed ████
██████████████████████████████████████████
████████████████████████████████████ MPS is entitled to discovery on to whom Intersil made this defamatory statement, which is the exact type of discovery that Intersil continues to hide with its "relevance review."

Whether Mr. Tsai obtained information from "public" sources has no bearing on whether Intersil made the defamatory statement to other customers, making the Special Master's order excluding such discovery improper. It is true the Court's first discovery order held discovery encompasses "communications and documents that Intersil received and/or sent out that contain nonpublic information of MPS's about that MPS failure." (D.I. 47 [Ex. 1] at 28:4-30:25.) But that order was ***granting*** MPS's motion, not restricting discovery, and furthermore, that order was made during early expedited discovery which ***only*** concerned a potential preliminary injunction on MPS's trade secret claim. Discovery on MPS's defamation claim was not active until MPS elected not to pursue a preliminary injunction and an overall Scheduling Order was entered, so

the Court's first discovery order does not bar discovery of Intersil's other defamatory statements. To hold otherwise would effectively foreclose MPS from pursuing its defamation claim.

### C.  The Additional Disclosures Were Not the Only Withheld Discovery.

Focusing solely on whether Intersil's additional disclosures came from public sources also ignores the multitude of documents that Intersil used its relevance review to hide that have nothing to do with that particular question.  Two of the most egregious examples from the April 13 production were noted above—Intersil's reverse engineering of MPS's product (Ex. 24) and creation of the "MPS Issue" presentation (Ex. 21)—but there are hundreds of others that provide evidence Intersil is still using its "relevance review" to conceal discovery, which must be stopped, regardless of whether Intersil obtained any information from public sources.

### D.  This Narrow Request is Not Overly Burdensome or Disproportionate.

Finally, this is not an overly burdensome or disproportionate request.  Given the Special Master's March 23 order and Intersil's subsequent production have both confirmed the faultiness in Intersil's "relevance review," Intersil should really be compelled to produce all e-mail in the June-December 2016 discovery period set by the Court's first discovery order.  (D.I. 47 [Ex. 1] at 29:23-30:9.)  However, MPS is willing to narrow this request as much as possible to the November 22-December 31, 2016 period, as this is the critical period when Intersil would have made additional disclosures (and defamatory statements) about MPS's confidential information. Intersil's previous comments about volume—"just under 13,000" hits for the full seven-month period (D.I. 116 [Ex. 9] at 2)—as well as the reasonable volume of the non-culled production for November 10-22, 2016 confirm that this will be a very manageable volume of a couple thousand e-mails, which Intersil has already supposedly reviewed once for "relevance" anyway.

## IV.  CONCLUSION

For the foregoing reasons, MPS's objection should be sustained for the relief requested.

|  |  |
|---|---|
| *Of Counsel:* | ASHBY & GEDDES |
|  | /s/ *John G. Day* |
| PERKINS COIE LLP | _____ |
|  | John G. Day (#2403) |
| John P. Schnurer | Tiffany Geyer Lydon (#3950) |
| John D. Esterhay | 500 Delaware Avenue, 8th Floor |
| 11988 El Camino Real, Suite 350 | P.O. Box 1150 |
| San Diego, CA 92130-2594 | Wilmington, DE  19899 |
| (858) 720-5700 | (302) 654-1888 |
| jschnurer@perkinscoie.com | jday@ashby-geddes.com |
| jesterhay@perkinscoie.com | tlydon@ashby-geddes.com |
|  |  |
| Bobbie Wilson | *Attorneys for Plaintiff* |
| 505 Howard Street Suite 1000 | *Monolithic Power Systems, Inc.* |
| San Francisco, CA 94105 |  |
| (415) 344-7000 |  |
| BWilson@perkinscoie.com |  |
|  |  |
| Dan L. Bagatell |  |
| 3 Weatherby Road |  |
| Hanover, NH 03755–1923 |  |
| (602) 351-8250 |  |
| DBagatell@perkinscoie.com |  |

Dated:  July 6, 2018