IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MONOLITHIC POWER SYSTEMS, INC., | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 16-1125-LPS |
| RENESAS ELECTRONICS AMERICA INC. F/K/A INTERSIL CORP., | : | |
| Defendant. | : | |

## MEMORANDUM ORDER

At Wilmington this **9th** day of **October, 2019**:

Having reviewed the proposed final pretrial order ("PTO") (D.I. 347) filed by Plaintiff Monolithic Power Systems, Inc. ("MPS" or "Plaintiff") and Defendant Renesas Electronics America, Inc. ("Renensas," "Intersil," or "Defendant"), IT IS HEREBY ORDERED that:

1. MPS's motion *in limine* ("MIL") No. 1, to preclude Defendant from using certain language to describe the nature of a failure in two Supermicro motherboards, is **GRANTED IN PART** and **DENIED IN PART**. The terms "burning," "charring," "melting," and "overheating" (and their related adjective forms, i.e., burnt, charred, melted, ignited) have probative value that outweighs the risks identified in Federal Rule of Evidence 403 ("Rule 403") because they have an evidentiary basis in the record (e.g., testimony by witnesses from each side) and a reasonable juror could find they accurately characterize damage that occurred to server motherboards. Terms such as "blowing up," "blown up," "igniting," and "exploding or explosion," and characterizations of the product failure as presenting a "public safety issue" (or like terms) shall not be used at trial. Although these terms and characterizations do appear in the record, they

1

were not used to describe the actual impact of the product failure (which was essentially microscopic heat damage to components of larger products and was not the type of fiery explosion connoted by "blown up"). Defendant admits that "[m]icrosopic analysis is required to see *any* part of the product" (PTO Ex. 6 at 1), yet something quite different is incorrectly implied by some of the terms Defendant seeks to use. The terms the Court is not permitting lack probative value and raise a very substantial risk of unfairly prejudicing MPS by misleadingly suggesting to jurors that "the products could cause physical injury to actual human users." (PTO Ex. 5 at 3)

2. Intersil's MIL No. 1, to exclude evidence of Plaintiff's alternate damages theories involving the Microsoft Celestial Peak and Ice Lake contracts, is **GRANTED**. Plaintiff only made known to Defendant that these contracts were a basis for its claims – indeed, an overwhelmingly substantial basis, increasing the damages sought relating to Microsoft Cloud Computing by at least 5x, and potentially 60x (*see* PTO Ex. 8 at 1; PTO Ex. 9 at 2) – with service of the September 3, 2019 Third Supplemental Expert Report. This was not a timely disclosure, and nothing about the Court's July 30, 2019 Order makes it timely. Defendant would be severely prejudiced by having to confront this new, surprising damages request at trial without having had any opportunity (or any reason) to take discovery on it. (*See* PTO Ex. 8 at 2) (Intersil persuasively arguing "it obviously did not foresee that MPS would attempt to introduce new damage claims based on contracts that were awarded years after the events of this case") Nor could the Court cure this prejudice without disrupting trial, scheduled to begin on October 21. Application of the *Pennypack* factors strongly favors excluding this late-produced evidence. *See Meyers v. Pennypack Woods Home Ownership Ass'n.*, 559 F.2d 894, 904–05 (3d Cir. 1977).

3. Intersil's MIL No. 2, to limit testimony from Plaintiff's employees Qian Li and Jinghai Zhou to subject matter disclosed in Plaintiff's discovery responses, is **DENIED**. Mr. Li and Mr. Zhou may testify at trial pursuant to Fed. R. Evid. 701, which permits lay testimony that is (1) rationally based on the witness's perception; (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) not based on scientific, technical, or specialized knowledge within the scope of Rule 702. Defendant has failed to persuade the Court that they did not have the opportunity to depose Mr. Li or Mr. Zhou during discovery. Should Defendant believe that improper testimony is being offered at trial inconsistent with the Court's ruling, it may object to specific questions.

4. Intersil's MIL No. 3, to preclude trial testimony from Plaintiff's witnesses regarding causation, is **DENIED**. A party may prove causation through circumstantial evidence, including fact-based lay opinions as to what would have occurred but-for a defendant's allegedly tortious conduct. *See generally Ghee v. Marten Transp., Ltd.*, 570 F. App'x 228, 231 (3d Cir. 2014) ("Where, as here, a lay witness's opinion testimony 'is based on sufficient experience or specialized knowledge' and 'a sufficient connection' exists between 'such knowledge and experience and the lay opinion,' that opinion should be admitted because it 'may be fairly considered to be 'rationally based on the perception of the witness' and truly 'helpful' to the jury.'"). Plaintiff's witnesses may testify to their personal knowledge of the circumstances and their lay opinions based on their personal experiences. *See* Fed. R. Evid. 701. Should Defendant believe that improper testimony is being offered at trial inconsistent with the Court's ruling, it may object to specific questions.

With respect to other disputed issues identified in the PTO:

1. Defendant may be referred to at trial as "Intersil" or "Renesas." Documents and testimony have referred to Defendant as both. It would be confusing to the jury, and unfairly challenging for the parties, to have to refer to Defendant throughout solely as Intersil.

2. There is no need to define "Vcore" in the PTO. At trial, the parties may refer to "Vcore products" and "POL products" and may, through an appropriate witness, present evidence as to each. The parties may also propose definitions of these terms to be included in the preliminary jury instructions, should any party wish the Court to explain these terms at the start of trial.

3. There is nothing for the Court to decide with respect to Dispute No. 3.

4. With respect to Dispute No. 6, the Court will not strike the "Specific Contested Facts Contended by MPS," as the inclusion of this section provides notice to Intersil and preserves the record.

5. With respect to Dispute No. 7, the Court agrees with Intersil.

6. The parties shall be prepared to discuss at the pretrial conference on Thursday, October 10 ("PTC") their dispute regarding witnesses Chou, Chuang, Coffman, and Dotter. (*See* PTO at 20-24)

7. With respect to Dispute No. 8, the Court agrees with Intersil.

8. With respect to Dispute Nos. 9 and 10, the Court agrees with Intersil, with the following amendments: exhibits to be used in connection with direct examination and demonstrative exhibits shall be provided by 6 PM the day before their intended use, objections to them shall be provided by 9 PM the day before their intended use, and the objecting party shall bring any remaining ripe objections to the Court's attention in the morning before the jury comes into the Courtroom or such objections will be deemed waived.

8. Each side will be allocated a maximum of ten (10) hours for its presentation at trial. Having reviewed the PTO, and having presided over this litigation for approximately three years, the Court finds this amount of time to be reasonable and appropriate to enable each side to fully and fairly present its case on all disputed issues. The Court will explain further at the PTC how it counts time.

9. The parties shall be prepared to discuss at the PTC how they wish to present motions for judgment as a matter of law.

10. The parties shall be prepared to discuss at the PTC MPS's request to close the courtroom for limited portions of the trial.

11. The parties shall be prepared to discuss at the PTC Dispute No. 12, including Intersil's purportedly late-produced documents and the issue over confidentiality markings on exhibits.

_____
HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE